# Wytheville

CAMDEN V. VIRGINIA SAFE DEPOSIT AND TRUST CORPORATION.

June 12, 1913.

1. CORPORATIONS — *Insolvency—Receivership—Equity Jurisdiction.*—As the directors of a banking corporation occupy towards its stockholders and creditors the relation of trustees, bound to the exercise of due care in the management of its affairs, and are liable for any negligence on their part resulting in an inadequacy of its assets to discharge its liabilities, they may, upon the threatened insolvency of the company, apply to a court of equity to take charge of its assets and so administer them as to diminish as far as possible the injury to all concerned, including creditors, depositors and stockholders.

2. CORPORATIONS—*Insolvency—Receivership—Suit by Directors—Dissolution.*—A bill filed by directors of a corporation, who are also stockholders, for the sole purpose of collecting its assets and distributing them equitably amongst those entitled, is in no sense a bill to wind up the corporation. The result may be the application of all the assets of the corporation to the discharge of its liabilities, and its consequent inability to continue business, but neither insolvency nor the appointment of a receiver operates a dissolution of the corporation. A corporation may exist as a legal entity without any property or assets.

3. CONTEMPT—*Insolvent Corporations—Receivers—Wrongful Disbursements by Agent of Corporation—Parties.*—Where a court of equity has appointed receivers of a corporation and directed them to take charge of all the assets of the corporation to be administered by the court, and the agent in charge of a branch of such corporation has been duly notified of the appointment of the receivers and of their duties in the premises, if such agent thereafter wrongfully pays over funds of which he was the custodian to a creditor of the corporation he is guilty of a contempt of court, and may be proceeded against therefor, although not a party to the suit in which the receivers were appointed.

4. CONTEMPT—*Inability to Pay Money Judgment—Imprisonment.*—Where, in a proceeding for contempt, there is a decree for money against the defendant and also an order that unless the money be paid within a stated period the defendant shall be

attached and confined in jail, the payment of the money in ac-
cordance with the terms of the decree, or inability upon the part
of the defendant to pay it on account of poverty, insolvency, or
other cause not attributable to any fault of his, should be taken
as a satisfaction, and all further proceedings for contempt should
be discontinued.

Appeal from a decree of the Corporation Court of the
city of Alexandria, in which the appellant was proceeded
against for a contempt of court. From an adverse decree
he appeals.

*Affirmed.*

The opinion states the case.

*Harrison & Long,* for the appellant.

*S. G. Brent,* for the appellee

KEITH, P., delivered the opinion of the court.

This suit originated in a bill filed by Thomas J. Fannon
and others, as directors and stockholders of the Virginia
Safe Deposit and Trust Corporation, in which it is stated
that the defendant was incorporated under the laws of
the State of Virginia, with its principal office and place of
business in the city of Alexandria, Virginia, and had been
for some years past engaged in the business of a trust and
bonding company in said city; that it received deposits as
a bank and had numerous branches in various parts of
Virginia where deposits of money were received, and that
said company acted as a bonding company, executor, trus-
tee, etc.; that there were deposits of large amounts of money
with the company, and that it possessed large resources
and assets, ample it was believed to meet all its obli-
gations to depositors and creditors, and to all estates and

trusts for which it was bound; that owing to the illness of the president of the defendant, and being without reasonable assurance that he would be able personally to conduct its affairs for some time to come, the complainants found themselves unable to carry on the business of the defendant; that while it was believed that the assets of the corporation would be ample to meet all of its obligations, yet as there would be calls, in the near future, for large sums of money, they doubted their ability to raise the same, deprived of the services of their president, nor could they hope successfully to conduct the business of the defendant in the future; that because of these conditions the purposes for which the company was formed have failed, and it cannot be longer conducted either profitably or to serve any purpose of its creation or existence; that for the protection of its assets for the benefit of its depositors, for those for whom it had acted as executor, trustee, etc., and for those for whom it had given bond, it was necessary and imperative that its affairs be taken charge of by a court of equity, that a receiver or receivers be appointed, that its assets and resources be collected and realized upon and distributed amongst those entitled thereto equitably as their interests might appear; that complainants are all of its directors except its president, and have approved this application to the court, as appears by a resolution of the directors attached to and asked to be read as a part of the bill; that in order to secure all depositors and other creditors against any possibility of loss, in any event, the president of the defendant had conveyed to it large properties, mostly valuable real estate, of an estimated value of $200,000. Wherefore the complainants pray that the Virginia Safe Deposit and Trust Corporation be made a party defendant to the bill and required to answer the same, an answer under oath being waived; that a receiver or receivers may be appointed

for the said defendant; that its assets may be collected and distributed and its affairs wound up under orders of the court.

To this bill one of the plaintiffs made oath, and at a subsequent day the corporation appeared by its counsel and filed its answer, in which it says, "That it admits all the allegations of the bill of complaint and joins with the complainants in the request that a receiver be appointed for it, and that its affairs be wound up under orders of this court."

Thereupon, receivers were appointed of the Virginia Safe Deposit and Trust Corporation and all the branches thereof, and were directed to take charge of all the assets of the defendant and its branches, and all property, real, personal and mixed, to collect all debts, and hold the same subject to the orders of the court.

On June 10, 1911, the receivers reported that R. Lee Camden, the manager of the branch of the defendant company at Lovingston, Virginia, had paid out to Mrs. F. H. Kidd on a certificate of deposit the sum of $2,111.08, and divers sums to certain other parties which need not be further referred to.

The cause coming on to be heard on the 15th day of June, 1911, upon the papers formerly read and the report of the receivers, a rule was directed to be issued against E. L. Kidd, Mrs. F. H. Kidd, his wife, and R. Lee Camden, the manager of the Lovingston branch, returnable within ten days, "to show cause, if any they can, why they should not be proceeded against for contempt, and further why judgment should not be entered against them" for the amount of the payment.

Kidd and his wife, and Camden, filed their answers to this rule, and such proceedings were had as resulted in a decree of July 21, 1911, which recites, that the sum of $2,193.33 was turned over by Camden, manager of the

branch of the corporation at Lovingston, Va., after he had been notified that the receivers had been appointed, to E. L. Kidd as agent for his wife, Mrs. F. H. Kidd; that the said sum had not been returned to the receivers; and it was thereupon adjudged, ordered and decreed that the said E. L. Kidd, Mrs. F. H. Kidd, and R. Lee Camden do restore, pay and turn over forthwith to the receivers in the cause the said sum of $2,193.33 with interest thereon from the 29th day of December, 1910; and a decree was entered in favor of the receivers against the said parties, jointly and severally, for the said sum with interest thereon. It was further decreed, "that unless the said E. L. Kidd, Mrs. F. H. Kidd and R. Lee Camden, or some one of them, shall, within thirty days from this date, restore, pay and turn over to J. K. M. Norton and Howard W. Smith, receivers in this cause, the sum of $2,193.33, with interest thereon from the 29th day of December, 1910, the clerk of this court is directed and ordered to issue an attachment directed to the sheriff of Nelson county, Virginia, requiring him to attach and take in custody the persons of the said E. L. Kidd, Mrs. F. H. Kidd and R. Lee Camden, and deliver them to the sergeant of the city of Alexandria, . . . to be by the latter held and confined in the jail of the city of Alexandria, Virginia, until the said sum and interest and costs be paid as above directed, unless sooner released by order of this court or the judge thereof."

From that decree Kidd and wife obtained an appeal to this court, and the decree of the corporation court of Alexandria was reversed, the court being of opinion that "imprisonment for debt passed away in this State with the abolition of the *capias ad satisfaciendum* in 1849, and, in a proceeding for contempt, where the contempt is not established, it is error to seek to enforce the return of money improperly paid by an order directing the imprisonment

of the defendant if the money be not paid." See *Kidd* v. *Va. Safe Dep. & Tr. Corp.,* 113 Va. 612, 75 S. E. 145. The court, in the course of its opinion, said: "We are of opinion that the evidence was not sufficient to find the appellants guilty of the contempt with which they were charged;" and the opinion concludes as follows: "The decree of July 21, 1911, so far as it affects the appellants, is erroneous, and must be reversed, and the contempt proceeding as to them dismissed."

The only appellants at that time were E. L. Kidd and Mrs. H. F. Kidd. At a subsequent day R. Lee Camden filed his petition for an appeal from the same decree, which was awarded July 20, 1912.

The errors assigned by Camden in his petition are, first, that the court should have dimissed the rule on the ground that it was without jurisdiction.

The bill was filed by certain individuals styling themselves directors and stockholders of the defendant corporation. The object of the bill plainly is to have all the assets of the corporation administered by a court of equity so as to protect the rights and interests of all concerned. The bill states the case of the plaintiffs very briefly and succinctly, but from its averments no doubt is left that the affairs of the defendant were much complicated. It conducted not only a bank of deposit in Alexandria with branches in other parts of the State, but it acted as a bonding company, as executor and as trustee. It had large liabilities and resources, including an assignment by its president for the benefit of depositors and other creditors of real and personal property of an estimated value, as stated in the bill, of $200,000.

In *Marshall* v. *F. & M. Savings Bank of Alexandria,* 85 Va. 676, 8 S. E. 586, 2 L. R. A. 534, 17 Am. St. Rep. 84, this court quotes with approval from Morawetz on Private Corporations, who, speaking with reference to the duties of

directors, says (sec. 552), that "the plain and obvious rule is that directors impliedly undertake to use as much diligence and care as the proper performance of the duties of their office requires. What constitutes a proper performance of the duties of a director is a question of fact, which must be determined in each case in view of all the circumstances, the character of the company, the condition of its business, the usual methods of managing such companies, and all other relevant facts must be taken into consideration."

In the course of its opinion in that case the court said: "The high degree of confidence and responsibility resting upon directors of corporations has often led the courts to regard them as trustees, and to declare the relationship existing between them and the stockholders to be that of trustees and *cestuis que trustent,* respectively. If this can be asserted with regard to the generality of corporations, it is peculiarly and exceptionally true with regard to banking corporations. The directors of a bank are not trustees for the stockholders alone, but they owe an even earlier duty to the depositors. The law is, as it ought to be, very jealous in exacting the strict and thorough performance of these duties, and it is in the scrutiny of possible breaches of them that the rigid rules which govern trustees have been applied. It is not enough to exculpate a director that no actual dishonesty can be shown; that he cannot be positively proved to have been influenced by interested motives."

Such being the relations that the directors occupy towards the corporation, the duties which they owe the creditors and depositors, and the obligations which they incur if those duties be not faithfully performed, it would seem to follow that in the faithful discharge of their duties it would be proper for them to apply to a court of equity so to administer the affairs of the embarrassed corporation

as to diminish as far as possible the injury to all concerned, including creditors, depositors and stockholders. Owing to the relation existing between the directors and the corporation, they must be presumed to have an intimate and intelligent acquaintance with its affairs, and to be able to direct and assist in realizing its assets and in ascertaining its obligations, and to that end to apply to a court of equity for its assistance.

For another reason directors should be allowed to file such a bill as that before us. If the assets of the corporation prove inadequate to satisfy its liabilities, the directors are liable to stockholders and creditors for any damages which may accrue by reason of any negligence on their part, and it would seem to be nothing more than just that they should be allowed to come into court and defend themselves by anticipation against any possible charge of neglect of duty as directors, or if such neglect in fact existed use all the means at their disposal to repair the consequences of their default to themselves and to others.

This bill is in no sense one to wind up the corporation. Its sole object is to collect the corporation's assets and distribute them equitably among those entitled.

In Thompson on Corporations (2nd ed.), sec. 6485, it is said: "The mere insolvency of a corporation, however extreme, will not operate as a dissolution of the corporation. While this may be a ground for the appointment of a receiver or an assignment for the benefit of all creditors, still a corporation may exist as a legal entity without any property or assets, and that by unfortunate business transactions it has become totally bankrupt, or by some extraordinary disaster has been stripped of all its property, so that it is unable to continue its business or pay its existing indebtedness, still it is not dissolved."

Nor does the appointment of a receiver operate a dissolution of the corporation; and this is true though the re-

ceiver, in the discharge of his duties, may sell and dispose of all the corporation property. *Ibid,* sec. 6486.

We are of opinion that the court had jurisdiction to appoint receivers, and to collect and distribute the assets of the corporation.

As we have seen, the case of *Kidd* v. *Va. Safe Dep. & Tr. Corp., supra,* went off upon want of proof to establish the contempt. Kidd and his wife had no relation to the corporation other than as depositors. They denied that when they collected the money due upon the certificate of deposit they had any knowldege of the appointment of receivers to take charge of the assets of the corporation, and the court held the proof to be insufficient to overcome that denial. With reference to the appellant, however, the case is different. He was the manager at the town of Lovingston, Nelson county, Va., of a branch of the Virginia Safe Deposit and Trust Corporation. The trust company was itself in possession of the money deposited in that bank and stood towards its depositors in the relation of a debtor to creditors. Camden was the mere custodian and agent of the trust company, the manager of its affairs, and subject to its orders with respect to the business entrusted to him.

In his answer to the rule he says, that about ten o'clock on the morning of the 29th of December, 1910, while he was waiting on a customer, he received a telegram as follows: "Receivers were appointed last evening for Virginia Safe Deposit and Trust Corporation. Close doors of your branch and transmit all funds on hand to the receivers by express. Receive no further deposits. (Signed) C. J. Rixey, Pres., John D. Barbour, J. K. M. Norton, Receivers." That he was greatly shocked by the news, and at the earnest solicitation of Kidd, who represented that the loss of the deposit made by his wife, which represented the savings of a life-time and the fruits of hard work as a teacher, would result in her death, he yielded to his re-

quest and paid to him the sum of $2,193.33, the amount of the said certificate of deposit held by Mrs. Kidd.

Testifying as a witness in his own behalf, in answer to a question propounded to him by the court, as to whether or not Kidd knew that the bank had been put into the hands of receivers, he said: "I think so."

"Q. Can you be positive about that? A. I think so. I know that I recall the fact that Mr. Whitehead and Mr. Kidd—they promised not to give out the fact that I had paid them the money."

"Q. Was anything said if you should be called upon to make good the money that you paid Mr. Kidd and Mr. Whitehead at that time? A. I do not recall what Mr. Kidd said about that. I know that they both promised not to give out the fact that the money was paid them. At least I requested them to do so. I know that."

So that it appears, not only that he received a telegram notifying him that the corporation had been put into the hands of receivers and directing him to close the doors of the branch of which he was the manager, and transmit all funds in his possession to the receivers by express, and receive no further deposits, but that with full knowledge of these facts and with consciousness that he was doing that which he had not the lawful right to do, he wrongfully paid over the money with an injunction that his act was to be kept secret.

In section 145 of High on Receivers, it is said that courts are reluctant to interfere by receiver with property of third persons, and that the receiver should assert the claim by independent action; but in this case the court was not interfering with property of third persons through its receivers. It had required its receivers to take possession of all of the property of the corporation, and the receivers had duly notified the manager at Lovingston of this order. All the property within his possession as manager was the property not of a third person, but of the corporation.

In section 144 of the authority just quoted, it is said that "the receiver of an insolvent corporation may, by petition in the cause in which he was appointed and without the necessity of an independent suit, procure the transfer and delivery of a note held by officers of the corporation as a part of its assets, even though such officers are not parties to the cause. And when a receiver is appointed over real property, of which the owner is in possession, the proper course is to apply to the court to have the owner deliver possession to the receiver, since the latter cannot distrain upon the owner in possession, as he is not a tenant of the receiver. Such procedure does not conflict with the principle that no man shall be deprived of his property without due process of law, since the surrender to the receiver does not affect the ultimate question of the right to the property, any more than does the levy of an attachment; the purpose being merely to secure the property by getting it into the receiver's possession, so that it may be safely delivered to the party who shall be finally determined to be entitled thereto. And the order for the surrender of property to the receiver may, if necessary, be enforced by process of attachment."

In *Ames* v. *Trustees of Birkenhead Docks*, 20 Beav. 332, it was said: "There is no question but that this court will not permit a receiver, appointed by its authority, and who is, therefore, its officer, to be interfered with or dispossessed of the property he is directed to receive, by any one, although the order appointing him may be perfectly erroneous; this court requires and insists that application should be made to the court for permission to take possession of any property of which the receiver either has taken or is directed to take possession, and it is an idle distinction that this rule only applies to property actually in the hands of the receiver. If a receiver be appointed to receive debts, rents or tolls, the rule applies equally to all these cases, and no person will be permitted,

without the sanction or authority of the court, to intercept or prevent payment to the receiver of the debts, rents or the tolls, which he has not acually received, but which he is appointed to receive."

In *Ex parte Cohen,* 5 Cal. 494, it is said: "Courts of equity have the power to appoint receivers, and to order them to take possession of the property in controversy, whether in the immediate possession of the defendant or his agents; and in proper cases they can also order the defendants' agents or employees, although not parties to the record, to deliver the specific property to the receiver." And it was further said in that case, that where the parties were served with a rule to show cause why they should not deliver certain property in their possession to the receiver, appointed in a case to which they were not parties, and in obedience to the rule they appeared and contested the matter before the court, that when they appeared and filed their answer to this rule, the court acquired full jurisdiction over their persons as well as the subject matter.

As far as we have proceeded in this case, we are of opinion, as we have already stated, that the bill was a proper one for the appointment of receivers; that they were ordered to take charge of all the assets of the corporation to be administered by the court; that the appellant was duly notified of the appointment of the receivers and their duties in the premises; and that in flagrant disregard of his duty he wrongfully paid over the funds of which he was the custodian, and in so doing was guilty of a contempt of court.

We are further of opinion that the payment of the money in accordance with the terms of the decree, or inability upon the part of appellant to pay it on account of poverty, insolvency or other cause not attributable to any fault of his, should be taken as a satisfaction, and all further proceedings for contempt should be discontinued.

*Affirmed.*