# 𝕾𝖙𝖆𝖚𝖓𝖙𝖔𝖓.

## HAGAN, TRUSTEE, ET AL. V. DUNGANNON LUMBER COMPANY.

### September 23, 1926.

1. EXECUTIONS—*Judgment Confessed Under a Promise that no Execution Should be Levied—Remedy of Debtor.*—If a creditor has an execution issued in contravention of his agreement with the debtor, the remedy of the debtor is to move to quash the execution. The breach of such an agreement furnishes no ground for an injunction.

2. EXECUTIONS—*Following the Judgment—Agreement of the Parties—Credits—Negligent or Fraudulent Issue—Motion to Quash.*—If the *fi fa* does not follow the judgment, or is issued contrary to the agreement of the parties, or is subject to credits not endorsed, or has been negligently or fraudulently issued, a motion to quash it is the proper remedy, and this is a *direct proceeding* to attack the *fi fa*.

3. INJUNCTIONS—*Enjoining Creditor from Proceeding at Law—Priority Over Other Creditors.*—A debtor cannot enjoin a creditor from proceeding at law to obtain a judgment upon a legal demand simply because he would thereby obtain priority over other creditors who did not obtain like judgments.

4. EQUITY—*Jurisdiction—Receivers—Solvent Corporations—Unwillingness or Inability of Corporation to Conduct its Own Business—Case at Bar.*—The instant case was not a suit by a trustee invoking the aid of the court of equity to administer a trust fund, but was in effect a suit by a corporation alleging its unwillingness or inability to conduct its own business, the bill sets up no controversy between the corporation and its creditors, nor any amongst the creditors themselves, nor did it assert any legal difficulty in administering the corporation assets, except the issuance of executions against the corporation and the probability of other judgments being recovered against it.

   *Held:* That the bill set out no facts that would give a court of equity jurisdiction, and a demurrer thereto should have been sustained.

5. PRACTICE—*Judgments and Decrees—Issues Made by the Pleadings—Pleadings Presenting no Controversy.*—A court must in every case confine its decisions to the issues made by the pleadings and established by the proof, and where the pleadings present no controversy between the parties there is nothing to decide.

6. EQUITY—*Dismissal—Bill not Stating a Case Proper for Relief—Want*

*of Equity is Want of Jurisdiction—Objection by Defendant.*—Whenever it is brought to the attention of a court of equity, or it discovers that the bill does not state a case proper for relief in equity, it will dismiss the bill though no objection was taken to the jurisdiction by the defendant in his pleadings. The want of equity is a want of jurisdiction in such cases; and, if the defendant took no notice of the defect but defended on the merits, and the case was heard and decided on the merits, the Supreme Court of Appeals would reverse and dismiss where there was such a lack of jurisdiction.

7. DECLARATORY JUDGMENT ACT—*Actual Controversy—Bill—Case at Bar.*— In the instant case, a suit in equity by a solvent corporation asking for the appointment of a receiver and the administration of its assets, there was no actual controversy between the complainant and the defendants, certain lien creditors of complainant and the sheriff of the county. The bill bore no resemblance to a bill filed under the declaratory judgment act.

*Held:* That the bill could not be maintained under the declaratory judgment act.

8. CORPORATIONS—*Receivers—Solvent Corporations—Threats of Suits and Execution Against the Corporation—Case at Bar.*—In the instant case, a lumber company owning a large boundary of standing timber, a saw mill, a logging outfit and a large quantity of lumber, filed its bill in equity to which it made certain of its lien creditors and the sheriff defendants, praying to have a receiver appointed to dispose of and collect its assets. The company was largely indebted, but the bill alleged that it believed its assets were sufficient to pay all its debts. The bill further alleged that several of its creditors had recently obtained judgments and that executions had been issued on some of these judgments. It asked for an injunction restraining its creditors from suing or proceeding further, and from further prosecution of the executions against the corporation. In effect the bill alleged that the company owned a large amount of valuable property, and, while solvent, it was largely indebted, and was unwilling or incompetent to manage its own business so as to pay off its debts.

*Held:* That the bill could not be maintained under the declaratory judgment act nor under the general jurisdiction of equity.

Appeal from a decree of the Circuit Court of Wise county. Decree for complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*H. J. Kiser, J. S. Ashworth, S. H. Bond,* for the appellants.

*Munford, Hunton, Williams & Anderson, John W. Chalkley, E. M. Fulton, S. W. Coleman, Wirt P. Marks, Jr.,* for the appellees.

BURKS, J., delivered the opinion of the court.

The Dungannon Lumber Company was the owner of a very large boundary of standing timber in Wise and Scott counties, and of a band saw mill, a logging outfit, including a logging railroad, steel rails, locomotives and logging cars and various tools and equipment. It also owned a large quantity of lumber, but was heavily indebted.

In January, 1925, the company filed its bill in equity in the Circuit Court of Wise county to which it made certain of its lien creditors and the sheriff of Wise county defendants. The bill sets out, in a general way, a description of the property owned by the complainant, including "several million feet of timber still standing," the principal part of which was acquired from the appellant, and avers that the company "is largely indebted, but it believes its assets are sufficient to pay all its debts if properly managed and conserved." The bill then enumerates certain of its debts which are secured by deeds of trust on different portions of its property, including debts to the appellant. The bill further alleges that in February, 1924, the appellant was threatening suit on the indebtedness due it, and requested the complainant company to confess judgment in his favor for a portion of its past due indebtedness in order to furnish him additional security for the amount due him, and agreed that no execution should be issued on

the judgment, if confessed, and that accordingly judgment was confessed for $30,000, but that, in violation of such agreement, the appellant, some eight months after the confession, had caused execution to be issued on the judgment, and had it levied on the personal property of the company. The bill then proceeds as follows:

"Your orator further states that several unsecured creditors of your orator have recently obtained judgment before justices of the peace for sums under $300 each, and executions on these judgments have likewise been placed in the hands of C. C. Palmer, sheriff of Scott county, to be levied and collected; and other creditors have instituted additional suits, or threatened so to do. The purpose of this bill is to invoke the aid of a court of equity in administering the assets of your orator, to convene its creditors, to ascertain the proper order of priorities of its debts to enjoin and restrain further suits against your orator and further proceedings on the part of those who now hold executions to set aside the execution in favor of Charles F. Hagan, trustee, to have a receiver appointed who, under the direction of your honor, will dispose of and collect all of the assets of your orator and apply same in the proper and legal manner to your orator's liabilities. Your orator states that if delay is taken sufficient to give notice of the application for this injunction to the defendants, some of whom are not residents of the State of Virginia, and have no known attorney to whom notice may be given, great and irreparable damage will be done to your orator by such delay.

"Wherefore, being without remedy save in a court of equity, your orator prays that Charles F. Hagan, trustee, S. W. Coleman, trustee, Richmond Trust Company, a corporation, the Carnegie Steel Company, a corporation, the Meadows Company, a corporation, and C. C. Palmer, sheriff, be made parties defendants to this bill,

and be required to answer the same, but answer under oath is waived; that all creditors of your orator be assembled by proper order and procedure, that proper accounts be taken to ascertain and report the complete liabilities of your orator, together with all priorities; that your honor issue temporary injunction enjoining and restraining all the creditors of your orator from suing or proceeding further in suits already brought; and from further prosecution of executions against your orator; that the execution for $30,000 in favor of Chas. F. Hagan, trustee, now in the hands of C. C. Palmer, sheriff, and upon which he has made a levy, be annulled and held for naught; that a receiver be appointed by your honor, and directed to take charge of all the assets of your orator and preserve the same subject to such disposition thereof as your honor, by future order, may direct; that sale of such assets be ordered by your honor at such time or times and place and upon such terms as your honor may require. And for all such further and general relief as equity may require, and to your honor may seem mete, your orator will ever pray, etc."

The bill does not call in question the validity of any of the deeds of trust given by it to secure its indebtedness, or any conflict of liens or of interests of the creditors secured. It does not allege the insolvency of the company or its inability to pay its debts, but on the contrary avers that the complainant "believes its assets are sufficient to pay all its debts if properly managed and conserved." In effect, the allegations of the bill amount to simply this: The company owns a large amount of valuable property, and, while not insolvent, it "is largely indebted," and is unwilling or incompetent to manage its own business so as to pay off its debts and therefore comes into a court of equity and asks the appointment of a receiver to do this for it.

The appellant demurred to the bill, but the trial court overruled the demurrer.

[1] If the appellant had the execution issued in contravention of the agreement, the defendant had but to move to quash the execution. It furnished no ground for an injunction.

[2] In Burks' Pl. & Pr. (2d ed. by Morrissett), sec. 348, p. 664, it is said: If the *fi fa* does not follow the judgment, or is issued contrary to the agreement of the parties, or is subject to credits not endorsed, or has been negligently or fraudulently issued, a motion to quash it is the proper remedy, and this is a *direct proceeding* to attack the *fi fa.*" The following cases are cited to support the text: *Enders* v. *Burch*, 15 Gratt. (56 Va.) 64, 72; *Snaveley* v. *Harkrader*, 30 Gratt. (71 Va.) 487; *Baer* v. *Ingram*, 99 Va. 200, 37 S. E. 905; *Lowenback* v. *Kelly*, 111 Va. 439, 69 S. E. 352; *Taney* v. *Woodmanse*, 23 W. Va. 709; *Howell* v. *Thomason*, 34 W. Va. 794, 12 S. E. 1088.

[3] No authority is necessary for the proposition that a debtor cannot enjoin a creditor from proceeding at law to obtain a judgment upon a legal demand, simply because he would thereby obtain priority over other creditors who did not obtain like judgments.

[4] This was not a suit by a trustee invoking the aid of a court of equity to administer a trust fund, but a suit by the corporation alleging its unwillingness or inability to conduct its own business. It sets up no controversy between it and its creditors, nor any amongst the creditors themselves, nor does it assert any legal difficulty in administering its assets, except the issuance of the executions aforesaid, and the probability of other judgments being recovered against it, which we have seen are no grounds for equitable interference. The bill sets out no facts that would give a court of equity jurisdiction, and the demurrer thereto should have been sustained.

In *State ex rel. Merriam* v. *Ross*, 122 Mo. 435, 25 S. W. 947, 23 L. R. A. 534, 538, in a similar case, it is said: "Where, in this paper called a petition, is to be found a cause of action against anybody? What wrong is there complained of, calling for the exercise of the remedial jurisdiction of a court of law or equity? What right of the petitioner, or of anybody else for that matter, is therein alleged to have been infringed, or even threatened? None whatever. The whole scope of the paper is to inform the judge of the common pleas court in vacation that the railway company is in debt, in embarrassed circumstances, some of its creditors are about to sue upon its overdue obligations, and to pray the court to take charge of its property and administer it for the benefit of all concerned; in other words, it is simply a petition by a debtor for the appointment of a receiver to manage and carry on its business, so that its creditors cannot enforce their legal rights in the courts of the country, and not a petition stating a cause of action, either at law or in equity, in which, as incident thereto, a receiver might be appointed. The filing of that petition no more instituted an actual controversy between contending suitors in court than would the filing of a copy of the Lord's prayer."

In *Texas & P. R. Co.* v. *Gey*, 86 Tex. 571, 605, 26 S. W. 599, 613, 25 L. R. A. 52, 65, it is said "Corporations ought not to be heard to say that they are either indisposed or incompetent to manage their own affairs, and that, therefore, some court should take charge of them through a receiver.

[5] The bill presents no controversy between the complainants and the defendants named therein, and hence there was nothing to decide. "The court must in every case confine the decision to the issues made by the pleadings and established by the proof in the particular case."

*Richmond Eng. Corp.* v. *Loth*, 135 Va. 110, 160, 115 S. E. 774, 789.

[6] In *Catron* v. *Bostic*, 123 Va. 355, 360, it is said: "Whenever it is brought to the attention of a court of equity, or it discovers that the bill does not state a case proper for relief in equity, it will dismiss it though no objection was taken to the jurisdiction by the defendant in his pleadings. The want of equity is a want of jurisdiction in such cases and if the defendant took no notice of the defect but defended on the merits, and the case was heard and decided on the merits, this court will reverse and dismiss where there is such a lack of jurisdiction. *Morgan* v. *Carson*, 7 Leigh (34 Va.) 238; *Hudson* v. *Kline*, 9 Gratt. (50 Va.) 379, 386."

*Camden* v. *Virginia Safe Deposit Co.*, 115 Va. 20, 78 S. E. 596, is relied on as supporting the jurisdiction in equity, but it does not. That was a suit by directors asking the aid of a court of equity in administering the affairs of the company. The directors were regarded as trustees, and their suit as one by them as trustees to conserve and administer a trust fund. In the course of the opinion it is said: "Such being the relations that the directors occupy towards the corporation, the duties which they owe the creditors and depositors, and the obligations which they incur if those duties be not faithfully performed, which would seem to fall within the faithful discharge of their duties, it would be proper for them to apply to a court of equity so to administer the affairs of the embarrassed corporation as to diminish as far as possible the injury to all concerned, including creditors, depositors and stockholders. Owing to the relation existing between the directors and the corporation, they must be presumed to have an intimate and intelligent acquaintance with its affairs, and be able to direct and assist in realizing its assets, and in ascertain-

ing its obligations, and to that end to apply to a court of equity for its assistance."

[7] The bill cannot be maintained under the declaratory judgment act (Acts of 1922, p. 902), nor has that been intimated by counsel.   There was no "actual controversy" between the complainant and the defendants, and the bill bears no resemblance to a bill filed under the act. See *Patterson's Ex'or* v. *Patterson*, 144 Va. 113, 131 S. E. 217.

It is always a source of regret when this court is un-able to dispose of a case on its merits, but, as is well said in Story's Eq. Pleading, secs. 1 and 2:   "It is obvious that in every system of jurisdiction professing to provide for the due administration of public justice, some forms of proceeding must be established to bring the matters in controversy between the parties who are interested therein before the tribunal before which they are to be adjudicated.   And for the sake of the dispatch of business, as well as for its due arrangement with reference to the rights and conveniences of all the suitors, many regulations must be adopted to induce certainty, order, accuracy and uniformity in these proceedings. *   *   *

"Indeed,   *   *   *   there are many rules altogether founded in artificial reasoning, but which nevertheless may be affirmed, with few exceptions, to be greatly promotive of public justice and subservient to private convenience.   If, here and there, any of them work an apparent hardship or mischief, it will, on close examination, be found that they also accomplish much general permanent good; and in this respect they partake only of the infirmity of all general rules, which must, in particular cases, give rise to some inequalities and shut out some individual equities and rights."

[8] The observations are applicable particularly to

mere modes of procedure, but when it comes to a question of jurisdiction courts are powerless to extend their functions beyond usually well defined limits. In the instant case, it is clear that the trial court had no jurisdiction under its general equity powers, and to hold that it had jurisdiction under the declaratory judgment act (Acts, 1922, p. 902), would not only extend the operation of the act far beyond its apparent purpose, but would open the door to cases not contemplated by the statute, involving no litigation but for the most part moot questions not adequately presented, and flood the courts with cases involving numerous questions which would otherwise probably never arise.

For the error of the trial court in overruling the demurrer of the appellant to complainant's bill, its decree must be reversed, and an order will be entered in this court remanding the case to the trial court for settlement of the accounts of the receiver and for such decree as may be proper, not inconsistent with the views hereinbefore expressed, and with costs to the appellant against the appellee, Dungannon Lumber Company.

*Reversed.*