201 Va. 890 (1960)
NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, ETC., ET AL.
v.
COMMITTEE ON OFFENSES AGAINST THE ADMINISTRATION OF JUSTICE, ET AL.
Record No. 5098.
Supreme Court of Virginia.
June 13, 1960.
S. W. Tucker (Oliver W. Hill; Robert L. Carter, on brief), for the appellants.
William H. King (A. S. Harrison, Jr., Attorney General; Kenneth C. Patty, Assistant Attorney General, on brief), for the appellees.
Present, All the Justices.
1. Chapter 373 of the Acts of Assembly 1958 created the Committee on Offenses Against the Administration of Justice and directed its attention specifically (a) to the administration of the laws relating to offenses concerning the promotion or support of litigation by persons not parties thereto and (b) to the enforcement of the tax laws with respect to such persons. Appellants NAACP and its unincorporated Virginia affiliate filed a bill to force discovery of certain records in the possession of the Committee and to enjoin the Committee from compelling disclosure of the identity of their members, contributors or voluntary workers or the names of persons who had requested appellants' aid. From a decree dismissing this bill appeal was taken, appellants arguing -- among other points -- that the Act had expired and the powers of the Committee had lapsed. This contention was not valid. Chapter 373 contains no provision limiting its duration nor has it been expressly repealed, but on the contrary has been codified in the Code. Not only did the 1960 General Assembly accept a report of the Committee which stated its work needed to be vigorously pursued but three vacancies on the Committee have been filled since the adjournment of the 1960 session, thus evidencing a manifest legislative intention not to limit the effective life of the Act.
2. The Circuit Court of the City of Richmond had jurisdiction to entertain the cause. A suit against a duly constituted committee of the General Assembly is a suit against the Commonwealth, and such suits may, under the provisions of Code 1950, sections 8-38(9) and 8-40, be effectively maintained only in the Circuit Court of the City of Richmond.
3. The court below committed no error in entertaining and hearing evidence on the motion to dismiss appellants' bill. A failure to state a case justifying equitable relief is jurisdictional and may be reached by motion to dismiss.
4. The trial court properly ruled that it had no authority on the record presented to compel a disclosure of certain records of the Committee, disclosure of which under its rules required the consent of the chairman or a majority of its members. The legislature has inherent power to appoint committees to secure information to assist it in enacting needful laws. Such committees when acting within the bounds of their authority act as the legislature itself, and their records are privileged and not subject to disclosure.
5. Appellants' bill stated no case for injunctive relief and was correctly dismissed. Appellants showed no imminent action threatening them with irreparable injury and had adequate remedies available if the Committee caused process to issue against them, such as motion to quash the subpoena. The alleged invalidity of the act was not a ground of equity jurisdiction; whereas the granting of injunctive relief would invade the legislative prerogatives of the Committee.
Appeal from a decree of the Circuit Court of the city of Richmond. Hon. E. W. Hening, Jr., judge presiding. The opinion states the case.
SNEAD
SNEAD, J., delivered the opinion of the court.
Appellants, National Association for the Advancement of Colored People, a corporation, hereinafter referred to as "NAACP", and the Virginia State Conference of National Association for the Advancement of Colored People Branches, an unincorporated association affiliated with NAACP, were awarded an appeal from a decree entered May 19, 1959, which dismissed their bill of complaint exhibited against the Committee on Offenses Against the Administration of *892 Justice, its individual members and clerk, appellees, hereinafter referred to as "Committee", created pursuant to Chapter 373, Acts of Assembly 1958. Sections 3, 4, 5 and 6 thereof are printed in the margin.
"| 3. The Joint Committee may hold hearings anywhere in the State. The Chairman of the Committee, or any member acting at his direction shall have authority to issue subpoenas, which may be served by any sheriff or sergeant of this State, or by any agent or investigator of the Committee, all with return shown thereon, requiring the attendance of witnesses, the production of books, records, photographs and other writings, or both. The Committee also may compel the attendance of witnesses and the production of books, records, photographs and other writings by motion made before the circuit or corporation court having jurisdiction of the person whose attendance or of whom production is sought. The court upon such motion shall issue such subpoenas, writs, processes or orders as the court deems necessary. If any person, firm, corporation, association or other organization (hereinafter severally referred to as 'persons') fails to appear in response to any subpoena as thereby required, or any person fails or refuses, without legal cause, to answer any question propounded to him or fails or refuses to produce writings or, upon his appearance pursuant to a subpoena behaves in a disorderly manner, then upon the application by the Chairman, or by any member of the Committee acting at his direction, or by its counsel, to the circuit or corporation court of the county or city wherein such person resides or may be found, such court shall issue an order directing its clerk to issue a rule against such person to show cause why he should not be punished for contempt by reason of his failure to so appear, testify, produce writings or because of such disorderly behavior. The Chairman of the Committee, or any member acting at his direction, shall be authorized to administer oaths to witnesses."
"| 4. The Joint Committee or any one or more members thereof, when acting pursuant to written direction of a majority of the Committee, may take the deposition of any witness, within or without the State, who is thought to possess information germane to the matters under investigation. The testimony of any such witness within the State may be taken pursuant to a subpoena issued by the Committee or by the clerk of the circuit or corporation court having jurisdiction of the person of such witness; and the testimony of a witness without the State shall be taken in compliance with || 8-305 and 8-306 insofar as practicable. Any such deposition taken by less than a quorum of the Committee shall be as valid as if taken by a quorum."
"| 5. The Joint Committee may file interrogatories in the clerk's office of the circuit or corporation court having jurisdiction of the person from whom answers are sought. Upon such filing, the clerk shall issue a summons, directed as prescribed in | 8-44 requiring the sheriff or sergeant to summon the person to answer such interrogatories, and make return thereof within such time, not exceeding sixty days, as may be prescribed in the summons. With the summons there shall be a copy of the interrogatories, which shall be delivered to the person served with the summons at the time of service. The Committee may also issue, have served, and require answers to interrogatories."
"| 6. The Joint Committee, or any member thereof when acting pursuant to its direction, may sue out an attachment for any book, record, photograph or other writing in the possession or subject to the control of any person in the circuit or corporation court of the county or city having jurisdiction of such person. Proceedings for an attachment hereunder shall be initiated by a sworn petition which shall describe such writings with reasonable certainty and shall state the grounds on which the attachment is sought. It shall be sufficient ground for an attachment if it appears from the petition that the person named therein is destroying, removing or concealing, or is about to destroy, remove or conceal, or that it is believed that, if otherwise proceeded against, such person will destroy, remove or conceal such writings to avoid their production."
"Upon the filing of the petition, the clerk before whom the petition is filed shall issue an attachment in accordance with its prayer. Such attachment shall be directed to the sheriff or sergeant of the county or city and shall be returnable before the court out of which it was issued, or the judge thereof in vacation, not more than thirty days from the date of service. Such attachment shall command the officer to whom it may be directed to attach the writings described therein and to keep the same safely in his possession until further order of the court."
"Any proceeding by the person in possession or control of such writings to quash an attachment shall be by motion to the court from which the attachment issued. Such motion shall be verified by affidavit and shall recite with particularity its grounds. The motion shall be filed not more than seven days after the attachment shall have been levied. Pending the court's decision on a motion to quash such attachment, and in no event earlier than seven days after its levy, the writings shall not be examined by the Joint Committee, but shall remain under the control of the court."
Note: Section 6 (Code | 30-47) has been amended and reenacted by Chapter 39, Acts of Assembly 1959, Ex. Sess., to provide for the sealing of property attached by the officer and to be returned forthwith by him to the custody of the court, and to permit an inspection of writings by the person formerly in possession during the seven day period after levy upon satisfying the court that the examination is necessary to prevent undue hardship. *893 
In their bill, complainants prayed for discovery of certain records in possession of the Committee. They also prayed that the Committee and their successors in office be enjoined and restrained from "(1) in anywise enforcing, executing or proceeding against complainants, their affiliates, officers, members, contributors, voluntary workers, and attorneys associated with the conduct of the program of the complainants, or any of them, under the provisions of Section 6 of Chapter 373, Acts of the General Assembly of Virginia, 1958 session, and from (2) in anywise enforcing, executing or proceeding under any provision of Chapter 373 * * * in such manner as to compel, through the use of compulsory process, (a) disclosure of the names or other information leading to the identity of any member, contributor, voluntary worker or associated of the complainants, or of any person who has requested of or received from the complainants assistance in any matter, case or proceeding involving an issue of racial segregation or discrimination, or (b) explanation for, or discussion of, any person's belief or his advocacy of, or participation in, or donation of support for litigation to vindicate rights and privileges secured by the Constitution and laws of the United States." *894 
The bill was filed on November 18, 1958, in the Law and Equity Court of the City of Richmond. On December 2, 1958, appellees filed a motion to remove the cause to the Circuit Court of the City of Richmond on the grounds that exclusive jurisdiction of the cause was vested in the Circuit Court, and there was pending in that court proceedings between the same litigants in which the issues raised in this proceeding might be fully and finally determined. Over objections of appellants the Law and Equity Court granted the motion and ordered the cause removed. On December 5, 1958, the Circuit Court ordered the suit docketed and proceeded with as if it had been originally instituted there. On the same day appellants filed their motion in the Circuit Court to remove the cause to one of the courts in the city of Richmond having general equity jurisdiction, contending that the cause was not one within the limited and exclusive statutory jurisdiction of the Circuit Court of the City of Richmond. Following the order of December 18, 1958, overruling that motion, appellees on the same day filed a motion to dismiss the bill.
The grounds alleged in support of the motion were: (a) Appellants were in no way threatened with imminent and irreparable injury. (b) Adequate remedies at law were available to appellants. (c) Except for published reports of legislative committees created under Chapters 34 and 37, Acts of Assembly 1956, Ex. Sess., which are public documents, the transcripts of proceedings before, and the records of, such legislative committees are the sole property of the Committee, are privileged, private in nature, and are not subject to disclosure. (d) The suit was brought in bad faith and only for the purpose of hindering appellees in the performance of their proper duties.
On March 20, 1959, the day set for argument on appellees' motion to dismiss the bill, appellants filed a motion to reject and strike it. For their grounds they asserted the paper writing according to its substance was not a plea, demurrer or answer, and was therefore not a pleading cognizable in the chancery courts of this Commonwealth. After hearing argument, the motion to reject was overruled.
Over appellants' objections the court proceeded to hear evidence ore tenus with regard to appellees' motion to dismiss. Succinctly stated, the testimony and exhibits show, among other things, that the records sought by appellants relate not only to investigations of NAACP and its affiliates, but also to investigations made of other unrelated persons and organizations; that of the many groups investigated only NAACP and its affiliates had declined to furnish all *895 information requested; that the rules adopted by the Committee provide that its records shall not be released without the approval of the Committee; that the only action taken by the Committee was in the nature of interrogatories; that transcripts of testimony of witnesses which NAACP and its affiliates requested were made available to them, and that reports made to the General Assembly by the Committee's predecessors, created by Chapters 34 and 37, Acts of Assembly 1956, Ex. Sess., were matters of public record and had been seen by counsel for appellants. Oral argument was heard and written memoranda were later submitted. By its decree of May 19, 1959, the court sustained the motion and dismissed the bill.
The decree incorporated the court's letter opinion of April 30, 1959, which found, inter alia, that the motion to dismiss was permitted under Virginia law; that the records of the Committee were privileged and the court was without authority to require a disclosure of them; that there had been no showing that appellants were threatened with imminent injury, and that they had not brought their case within the rules of law which would justify the granting of injunctive relief.
 During oral argument of the case in this Court counsel for appellants suggested that the case was now moot because Chapter 373, under which the Committee was created, had expired and the powers of the Committee had lapsed. Since this point had not been discussed in the briefs, we requested counsel to file memoranda in support of their respective views, which was done.
Chapter 373, | 1(a) directs the Committee to "investigate and determine the extent and manner in which the laws of the Commonwealth relating to the administration of justice are being observed, administered and enforced" and specifically directs "its attention to the observance and to the methods and means of administration and enforcement of those laws, whether statutory or common law, relating to champerty, maintenance, barratry, running and capping and other offenses of any other nature relating to the promotion or support of litigation by persons who are not parties thereto." Section 1(b) directs the Committee's attention to the manner in which the laws of the Commonwealth relating to taxes are being observed and enforced with respect to persons, corporations and associations who do, or seek to promote or support litigation to which they are not parties.
Section 1(c) provides that the "Joint Committee" shall be composed of seven members to be selected from the Courts of Justice Committees of the House of Delegates and the Senate. Four shall be appointed by the Speaker of the House of Delegates and three by *896 the President of the Senate. It further provides: "Members shall serve on the Committee during the effective period of this act; the presiding officer of each House to have the power to fill vacancies occurring on the Committee."
Section 10 provides: "* * * [Not] later than sixty days preceding the next regular session of the General Assembly, it [Committee] shall make a written report to the General Assembly, upon the observance, administration and method of enforcement of said common and statutory laws, and shall set forth in its report its findings and recommendations and drafts of any amendatory legislation the Committee deems desirable."
Appellants point to language employed in Section 1(c), supra, which reads: "Members shall serve on the Committee during the effective period of this Act * * *." They argue that the requirement in Section 10, supra, that the Committee make a written report to the General Assembly not later than sixty days preceding the next regular session setting forth its findings and recommendations and any drafts of legislation deemed advisable affords a "clue" as to what the General Assembly intended as the effective period of the Act. We observe Section 10 directs that the Committee make "a" written report not later than the designated time, but does not exclude later reports.
Chapter 34, Acts of Assembly 1956, Ex. Sess., which established the original Committee on Offenses Against the Administration of Justice, provided: "This act shall be effective until the convening of the next regular session of the General Assembly." Consequently, it expired upon the happening of that event. Chapter 37, also enacted at the 1956 Extra Session, contained no express provision limiting its duration. It was expressly repealed by Chapter 373, which contains no express provision limiting its duration. There has been no express repeal of Chapter 373. On the contrary the acceptance by the 1960 General Assembly of the Committee's report, which stated the work of the Committee "needs to be pursued vigorously" and that it was considered "essential" that the Committee further investigate, is noteworthy. Moreover, the Act, which was regularly passed, has been codified as || 30-42 through 30-51 in the official State code, and three vacancies on the Committee were filled by the appointive powers after the adjournment of the 1960 Session of the General Assembly and before the suggestion was made that the case was moot. It is manifest that the General Assembly did not intend to limit the effective life of Chapter 373. *897 
It was contended in Ex Parte Johnson, 187 S.C. 1, 196 S.E. 164, that a joint resolution adopted by the General Assembly of South Carolina which established a joint legislative committee to investigate law enforcement agencies in that State had expired by limitation and that the powers of the Committee had terminated, because the Committee had not made its final report within the time designated in the resolution. It provided that the Committee "shall report to the General Assembly not later than February 15th at the next regular session of the legislature." The court observed that the joint resolution did not contain any stipulation, either expressly or by implication that the failure to file such a report would ipso facto end the powers of the Committee and said: "Indeed, it is too obvious for extended discussion that this provision of the resolution in question was directory only, and that the authority of the committee continues unless and until some further action on the part of the General Assembly is taken."
It will be noted that the South Carolina committee was created by a joint resolution, which is not a law, whereas the Committee in the present case was established by statute.
In 50 Am. Jur., Statutes, | 513, p. 524, it is stated:
"Generally. -- All acts not in terms limited in their operation to a particular term of time are in legal contemplation perpetual; that is, they continue in force until duly altered or repealed by competent authority. It was long ago settled that an act of Parliament cannot be repealed by nonuser. This rule is in accord with reason and has been accepted in the United States, where it has been held that the fact that a statute has remained unenforced for a long period of time does not render it inoperative. In this respect, the general rule is that a statute cannot be terminated by means other than an express provision of subsequent law or necessary implication therefrom, or an express provision in the repealing act itself for its termination by some act other than a repealing statute, or a subsequent constitutional provision." See Wellington et al., Petitioners, 16 Pick. (33 Mass.) 87, 26 Am.Dec. 631, 640.
The Act by its terms does not limit its operation to a particular period of time and it has not been terminated by subsequent Acts of the General Assembly or by a constitutional provision. We hold that Chapter 373 is presently effective and will remain so until it has been duly altered or repealed.
We turn now to the other questions involved on this appeal. They are: Whether the Circuit Court of the City of Richmond had jurisdiction *898 to entertain this suit; whether the trial court had authority to consider and grant appellees' motion to dismiss the bill of complaint; whether the trial court had authority to compel the Committee to produce its private records, and whether the bill of complaint stated a case which would justify injunctive relief.
 Appellants contend that the Circuit Court of the City of Richmond was without jurisdiction to entertain this cause. The pertinent sections of Code 1950, follow:
Section 8-38. "Venue generally. -- Any action at law or suit in equity, except where it is otherwise especially provided, may be brought in any county or corporation:"
* * *
"(9) If it be an action or a suit in which it is necessary or proper to make any of the following public officers a party defendant, to-wit, the Governor, Attorney General, State Treasurer, Secretary of the Commonwealth, Comptroller, Superintendent of Public Instruction, or Commissioner of Agriculture and Immigration; or in which it may be necessary or proper to make a party defendant the State Board of Education, or other public corporation composed of officers of government, of the funds and property of which the Commonwealth is sole owner; or in which it shall be attempted to enjoin or otherwise suspend or affect any judgment or decree on behalf of the Commonwealth, or any execution issued on such judgment or decree, it shall be only in the city of Richmond; * * *."
Section 8-40. "In what courts, actions or suits may be brought. -- Any action or suit mentioned in either of the two preceding sections may be in a circuit court of any county, or circuit or corporation court of any city, wherein it is allowed or required thereby to be brought; except that any such action or suit as is allowed by paragraph (8) of | 8-38, or required by paragraph (9) of such section, to be brought in the city of Richmond, shall be in the Circuit Court of such city. And if any such action or suit as is mentioned in such paragraph (9) is brought in any other court than the Circuit Court of the city of Richmond, it shall, by order of such other court, be transferred, together with all the papers and proceedings therein, to the Circuit Court of the city of Richmond, to be proceeded in to a final decision in such Circuit Court. And if such action or suit be not so transferred, but be proceeded in to judgment or decree in the court wherein it is so pending or shall have been so brought, such *899 judgment or decree, so far as it may be against any of the public officers or public corporations mentioned in paragraph (9) or against the Commonwealth, shall be void." (Italics supplied.)
Appellants say that appellees do not fall within the terms of | 8-38(9) because (1) the members of the General Assembly who constitute the Committee are not expressly included among the state officers mentioned therein and may not be inferentially included; (2) the Committee does not qualify as a "public corporation composed of officers of government, of the funds and property of which the Commonwealth is sole owner", and (3) the bill mentions no judgment on behalf of the Commonwealth and none is in existence which they seek to restrain.
Appellees argue that the fundamental purpose of appellants' bill is to restrain the Committee from proceeding in such a manner as to discover activities of NAACP and its affiliates; that it is apparent that the Committee might need to proceed to judgment or decree and issue execution thereon against appellants or their representatives in order to require disclosure of such activities, and that the provision "any judgment or decree on behalf of the Commonwealth, or any execution issued on such judgment or decree" in | 8-38(9) applies to future as well as past judgments or decrees and executions issued thereon. They also contend that when || 8-38(9) and 8-40 are read together it is clear that the General Assembly intended that any action or suit against the Commonwealth must be brought in the Circuit Court of the City of Richmond.
In Richmond Pace, 127 Va. 274, 287, 103 S.E. we said:
"A State government is an independent existence, representing the sovereignity of the people. The power of the legislature is the power of that sovereignty, and, as a general proposition, is supreme in all respects and unlimited in all matters pertaining to legitimate legislation."
This being true, it is evident that a suit against the General Assembly or its duly constituted committees is a suit against the Commonwealth.
In Burks Pleading and Practice, (4th ed.) p. 60, it is stated:
"* * * If, on the other hand, the suit or action is against the Commonwealth, or against one of its public corporations mentioned in paragraph 9 of | 8-38, or involves as a defendant, one of its officers mentioned in that section, then, such a suit or action must be commenced in the Circuit Court of the City of Richmond." (Italics supplied.) *900 
We said in Bott Hampton Roads San. Comm., 190 Va. 775, 783, 58 S.E.2d 306:
"It is elementary that the intention of the General Assembly must be sought and applied when we consider the Act, and we must consider and give effect to the specific language used. In our quest for the intention we must consider the object of the legislation, the purpose to be accomplished, and so construe it as to promote the end for which it was enacted."
Applying the above principles in construing || 8-38(9) and 8-40, we have no difficulty in reaching the conclusion that any suit or action against the Commonwealth may be effectively maintained only in the Circuit Court of the City of Richmond. Section 8-40 specifically states that if a suit or action as provided in | 8-38(9) is brought in any court, other than the Circuit Court of the City of Richmond, and proceeded in to a final decision in such court, the "judgment or decree, so far as it may be against any of the public officers or public corporations mentioned in Paragraph (9), or against the Commonwealth, shall be void."
 Appellants next contend that the trial court erred in entertaining, hearing evidence upon and granting appellees' motion to dismiss their bill. They argue that such action was a departure from the established practice in courts of equity in this Commonwealth so as to constitute a denial of due process under the Fourteenth Amendment of the Constitution of the United States. They maintain that the only proper defensive pleadings to a bill in equity are demurrer, plea, answer, and disclaimer.
We have often said that a failure to state in the bill a case justifying equitable relief, as we later determine to be the case here, is jurisdictional.
In Catron Bostic, 123 Va. 355, 360, 96 S.E. 845, it is stated:
"* * * [Whenever] it is brought to the attention of a court of equity, or it discovers that a bill does not state a case proper for relief in equity, it will dismiss it, though no objection was taken to the jurisdiction by the defendant in his pleadings. The want of equity is the want of jurisdiction in such case * * *." See Hagan Dungannon Lumber Co., 145 Va. 568, 575, 134 S.E. 570; McCloud Va. E. & P. Co., 164 Va. 604, 609, 180 S.E. 299.
With regard to the manner in which objection for lack of jurisdiction may be raised, we observed in Thacker Hubard & Appleby, 122 Va. 379, 386, 94 S.E. 929: *901 
"* * * Objection for want of jurisdiction of the subject matter may be taken by demurrer, or motion, or in any way by which the subject may be brought to the attention of the court, * * *." See Nolde Bros. Chalkley, 184 Va. 553, 561, 35 S.E.2d 827.
In Moore N. & W. Ry. Co., 124 Va. 628, 637, 98 S.E. 635, it is said:
"* * * In such cases the defense of lack of jurisdiction is a substantial defense and is in its nature a bar to the action. It is not merely a dilatory defense. It does not go merely to the venue. Hence, in such cases the defense need not be pleaded by a plea in abatement. It may be pleaded in bar, at rules or at term, or the defense may be otherwise made at term by motion to quash to process of summons or by motion to dismiss the action or suit, as may be most appropriate; and, indeed, the court should, ex officio, mero motu, dismiss the action or suit, upon the fact disclosing the lack of jurisdiction appearing or being made to appear of record by any method which is in accordance with the prevailing practice." (Citing cases.)
These principles apply to suits in equity as well as actions at law. Thus where jurisdiction of the subject matter is questioned, it may be accomplished by a motion to dismiss the bill. We find that the chancellor had authority to consider, hear evidence upon, and grant appellees' motion to dismiss appellants' bill of complaint, and that no constitutional provisions were thereby violated.
 Section 9 of Chapter 373 provides that all transcripts of proceedings before, and records of, the Committee on Offenses Against the Administration of Justice and the Legislative Committee, created by Chapters 34 and 37 of Acts of Assembly 1956, Ex. Sess., respectively, are subject to the inspection and use of the present Committee. Appellants prayed for discovery of those records as well as separate reports of the two former Committees, which reports the record shows are public and have been seen by counsel for appellants. They assert that a production of these papers and documents will support allegations in their bill.
The Committee maintains that the records which have not been released are private in nature, privileged and are not subject to disclosure as shown by Section 14 of its Rules, which reads:
"No committee records, reports or publications, or summaries thereof, shall be made or released to others without the approval of the Chairman of the Committee or a majority of its members."
The legislatures of the several states have inherent powers to appoint committees to secure necessary information to assist them *902 in preparing and enacting needful laws. It is universally recognized that the existence of such power is essential for the efficient discharge of legislative functions. NAACP Committee, 199 Va. 665, 674, 101 S.E.2d 631; 49 Am. Jur., States, etc., | 40, pp. 257, 258. When such a committee acts within bounds of its purposes, it acts as the legislature itself. McGrain Daugherty, 273 U.S. 135, 165, 47 S.Ct. 319, 50 A.L.R. 1, 71 L.ed. 580; United States Di Carlo, 102 F.Supp. 597, 601.
In Wise Bigger, 79 Va. 269, 281, Wise contended that the vote on "an act to apportion the representation of the State of Virginia in the Congress of the United States" was short of the number required for its passage and sought a writ of mandamus to require Bigger, Clerk of the House of Delegates and keeper of the rolls, to strike it from the rolls and to compel the superintendent of public printing to omit it from the Acts of Assembly. The records indicated a proper passage of the Act and the writ of mandamus was denied. The court said:
"To do this [to inquire into the veracity of the record], would be to violate both the letter and the spirit of the constitution; to invade a co-ordinate and independent department of the government, and to interfere with the separate and legitimate power and functions of the legislature." See also
Clough Curtis, 134 U.S. 361, 371, 10 S.Ct. 573, 33 L.ed. 945.
Morris Creel, 2 Va. Cas. (4 Va.) 49, is a case which presented an issue somewhat analogous to the issue presented here. At that time the Constitution of Virginia provided for a Privy Council, which was called in the opinion an Executive Council, composed of eight members, chosen by joint ballot of both Houses of the Assembly, to assist in the administration of government. The Clerk of the Executive Council was served with a subpoena duces tecum, by which he was commanded to attend court and bring with him certain documents. He failed to appear as directed and a rule was issued for him to show cause why an attachment should not issue for his contempt. In response to the rule he alleged, among other things: "That the Clerk of the Executive Council is not bound to attend any Court, and bring with him any paper filed in the office, upon a subpoena duces tecum directed to him, without an order of Council directing and authorizing him to do so." The Superior Court adjourned the question to the General Court which rendered the following judgment:
"The Court having maturely considered the question adjourned, doth, by the unanimous opinion of the Judges present, decide, that *903 a paper submitted to the Executive Council for the purpose of enabling it to perform its Executive functions, and filed among its papers, ought not to be withdrawn by the Clerk, without its order; and, therefore, that an Attachment ought not to be awarded."
Our question here involves only certain records of a duly constituted committee of the General Assembly, a disclosure of which is sought by appellants, and we hold that the trial court properly ruled that it was without authority on the record presented to compel a disclosure. As provided by Rule 14, supra, the consent of the chairman of the Committee or a majority of its members is essential for a disclosure to be compelled, unless favorable action is taken by the Joint Assembly.
 Finally, does appellants' bill state a case which would justify injunctive relief? Due to the extraordinary character of the injunctive remedy, the granting of such relief should be exercised sparingly and cautiously, with a full conviction of its urgent necessity. 28 Am. Jur., Injunctions, | 25, pp. 515, 516.
Appellants question the constitutionality of the Act. "The invalidity or unconstitutionality of a statute or ordinance is not of itself a ground of equity jurisdiction. A court of equity has not jurisdiction to enjoin acts only because they are attempted or threatened under color of an unconstitutional or void statute or ordinance. * * *." Thompson Smith, 155 Va. 367, 386, 154 S.E. 579.
The bill does not present a case for injunctive relief. Appellants have failed to allege any urgent necessity for the injunction requested or that action pursuant to the Act is imminent which will cause them irreparable injury.
In Backus Abbot, 136 W.Va. 891, 902, 69 S.E.2d 48, the court observed in denying the prayer for a mandatory injunction:
"The facts disclosed by the pleadings in this suit do not establish any urgent necessity for the injunctive relief sought by the plaintiffs or that such relief is necessary to prevent irreparable injury to the property which they claim; and the absence of either of these requisites deprives them of any right to relief by a mandatory injunction. * * *."
In Cruickshank Bidwell, 176 U.S. 73, 81, 20 S.Ct. 280, 44 L.ed. 377, the court said:
"The sole ground of equity jurisdiction put forward is the inadequacy of remedy at law in that the injury threatened is not susceptible of complete compensation in damages. The mere assertion that the apprehended acts will inflict irreparable injury is not enough. Facts *904 must be alleged from which the court can reasonably infer that such would be the result, and in this particular we think the bill fatally defective." See also Public Serv. Comm'n Wycoff Co., 344 U.S. 237, 240, 241, 73 S.Ct. 236, 97 L.ed. 291; Linehan Waterfront Commission of New York Harbor, 116 F.Supp. 401, 404.
There is another reason why injunctive relief was not available to appellants. It would serve to invade the legislative prerogatives of the Committee. In a per curiam opinion rendered in Mins McCarthy, 209 F.2d 307 (D.C.Cir.), where a motion for leave to file a stay was denied, it was held:
"The Court is of the opinion that where a committee of the Congress has issued a subpoena ad testificandum to a witness to appear at a hearing, without defining the questions to be asked, the judicial branch of the Government should not enjoin in advance the holding of the hearing or suspend the subpoena. The rights of witnesses in respect of any question actually asked at the hearing are subject to determination in appropriate proceedings thereafter."
There are adequate remedies available to appellants in event the Committee causes process to be issued against them for the purposes set forth in Sections 3, 4, 5 and 6 of Chapter 373. They may refuse to testify and test the validity of the Act under a citation for contempt, or, as permitted by our procedure, they may do so by a motion to quash or vacate the subpoena or attachment. See
NAACP Committee, supra, page 672.
For the stated reasons, the decree appealed from is affirmed.
Affirmed.