## Richmond

### National Association for the Advancement of Colored People, Incorporated, Et Al. v. Committee on Offenses Against the Administration of Justice.

January 20, 1958.

Record No. 4750.

Present, All the Justices.

The opinion states the case.

*S. W. Tucker (Roland D. Ealey; Oliver W. Hill; Martin A. Martin; W. Hale Thompson*, on brief), for the plaintiffs in error.

*William H. King,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

This writ of error was granted to review an order denying a motion to quash and dismiss two subpoenas which had been issued pursuant to the orders of the court below upon the ex parte motions of a joint legislative committee created by an Act of the General Assembly (Acts 1956, Ex. Sess., ch. 34, p. 35), hereinafter referred to as the Committee. The subpoenas directed W. L. Banks, as executive secretary of the Virginia State Conference of NAACP Branches, to produce before the Committee certain books, writings and other records. In a written motion to quash the subpoenas the National Association for the Advancement of Colored People, a corporation, hereinafter referred to as NAACP, the Virginia State Conference of NAACP Branches, a voluntary unincorporated association, and Banks challenged both the jurisdiction of the court to order the issuance of the subpoenas and the validity of the Act. After a hearing on the motion to quash, at which the movants introduced evidence in support of their position, the court entered an order denying the motion to quash.

The Committee concedes that the order under review is a final judgment, reviewable by this court under Code, § 8-462.

The assignments of error raise these questions: (1) Is the Hustings Court of the city of Richmond authorized to direct the issuance of the subpoenas; (2) Does the Act authorize the issuance of the subpoenas without notice, and if so, does it violate the constitutional requirement of due process; (3) Does the disclosure of the information sought by the subpoenas violate any constitutional rights of the appellants; (4) Does the Act creating the Committee and prescribing its functions violate § 39 of the State Constitution; and (5) Did the lower court abuse its sound judicial discretion in directing the issuance of the subpoenas?

The Act in question is printed in the margin.[1] It created a Joint

---

[1] *"An act to create a joint committee of the General Assembly to study and report upon the administration and enforcement of certain statutes; to prescribe the powers of such joint committee; to provide for the selection, terms of office and compensation of the members of such committee; and to require reports from the committee to the General Assembly.*

"Be it enacted by the General Assembly of Virginia:

"1. § 1. There is hereby created a joint committee of the General Assembly to be

Committee to be known as the Committee on Offenses Against the Administration of Justice, composed of three members of the House of Delegates and two members of the Senate. The Committee was directed to "investigate and determine the extent and manner in which the laws of the Commonwealth relating to the administration of justice are being administered and * * * specifically direct its at-

known as the Committee on Offenses Against the Administration of Justice, hereinafter referred to as Joint Committee. Such Joint Committee shall investigate and determine the extent and manner in which the laws of the Commonwealth relating to the administration of justice are being administered and enforced and shall specifically direct its attention to the administration and enforcement of those laws relating to champerty, maintenance, barratry, running and capping and other offenses of any other nature relating to the promotion or support of litigation by persons who are not parties thereto. The Joint Committee shall be composed of five members to be selected as follows: Three of the members shall be appointed by the Speaker of the House of Delegates from the membership of the House Committee for Courts of Justice and two of the members shall be appointed by the President of the Senate from the membership of the Senate Committee for Courts of Justice. Members shall serve on the Joint Committee during the effective period of this act; the presiding officer of each house shall have the power to fill vacancies occurring on the Joint Committee. The Joint Committee shall meet at least once in each three month period and oftener on call of the chairman or a majority of the members. The members of the Joint Committee shall receive the same salary and expenses for each day spent in the performance of their duties as is allowed under §§ 14-29.1 and 14-5 of the Code of Virginia, respectively, to be paid from the contingent fund of the General Assembly together with any other expenses incurred by the Joint Committee. The Joint Committee is hereby specifically vested with the powers and duties conferred upon committees of the General Assembly by § 30-10 of the Code of Virginia and any other provisions of law under which powers are conferred upon committees of the General Assembly. In addition to the foregoing powers, the Joint Committee shall be empowered to administer oaths and examine witnesses and may employ counsel to assist in its investigations. The Joint Committee may, in addition to the procedure provided in § 30-10 of the Code of Virginia, compel attendance of witnesses or production of documents by motion made before the circuit or corporation court having jurisdiction of the person or documents whose attendance or production is sought. The court, upon such motion, shall issue such subpoenas, writs, processes or orders as the court deems necessary.

"§ 2. All officers and agencies of the State shall assist the Joint Committee in the discharge of its duties.

"§ 3. The Joint Committee shall have plenary power to oversee the administration and manner of enforcement of the several statutes set forth in § 1 hereof, and, not later than sixty days preceding the next regular session of the General Assembly, it shall make a written report to the General Assembly upon the administration and method of enforcement of said statutes and shall set forth in its report its findings and recommendations and drafts of any amendatory legislation the Joint Committee deems desirable.

"2. This act shall be effective until the convening of the next regular session of the General Assembly.

"3. An emergency exists and this act is in force from its passage." (Acts 1956, Ex. Sess., ch. 34, p. 35.)

tention to the administration and enforcement of those laws relating to champerty, maintenance, barratry, running and capping and other offenses of any other nature relating to the promotion or support of litigation by persons who are not parties thereto."

The Committee was further given "plenary power to oversee the administration and manner of enforcement of the several statutes" relating to the above offenses, and "make a written report to the General Assembly upon the administration and method of enforcement of said statutes," together with "its findings and recommendations and drafts of any amendatory legislation" which it "deems desirable."

Among the statutes which the Committee was directed to study was an emergency act passed at the same session, defining and prohibiting the crime of barratry and providing penalties therefor. Acts 1956, Ex. Sess., ch. 35, p. 36; Code, 1956 Add. Supp., § 18-349.25 ff.

The Act creating the Committee empowered it to compel the attendance of witnesses or production of documents by two methods: (1) by proceeding under Code, § 30-10, which authorizes a Joint Committee of the General Assembly to compel such attendance or the production by a summons issued by the clerk of the Senate or House of Delegates, or the clerk of the Committee; or (2), by motion made by the Committee "before the circuit or corporation court having jurisdiction of the person or documents whose attendance or production is sought" for an order directing the issuance of a subpoena. In the present case the latter procedure was followed.

The first of the subpoenas, issued on February 14, 1957, directed Banks to produce before the Committee writings and documents containing the following information:

"1. The names and addresses of the principal officers of the Virginia State Conference of NAACP Branches and also the names and addresses of the agents, servants, employees, officers and voluntary workers and associates through whom such Conference carries on its activities in the Commonwealth of Virginia, and also the names of its members in the Commonwealth of Virginia, together with the last known addresses of all of the above designated persons; and

"2. All expenditures and disbursements made by the Virginia State Conference of NAACP Branches within the Commonwealth of Virginia during the year 1956, together with the names and addresses of the persons, firms, corporations, and associations to whom such expenditures and disbursements were made, and, the names and

addresses of the persons, firms, corporations, associations, and partnerships on whose behalf such expenditures and disbursements were made."

In his testimony at the hearing on the motion to quash, Banks testified that all of this information had been furnished except the names of the 23,000 members of the organization and its "voluntary workers and associates" through whom the Conference carries on its activities in this State.

The subpoena issued on March 8, 1957, called for substantially the same information as that required in the first subpoena and certain additional information. Banks testified that none of this additional information had been furnished. We deem it unnecessary to detail the information requested because, as we read the briefs and record, the real issue is whether the witness should be compelled to disclose the names and addresses of the members of the NAACP, and its voluntary workers and associates, in Virginia.

The record shows that the NAACP is a "membership corporation" chartered in 1911 under the laws of the State of New York. It has been registered with the State Corporation Commission of Virginia and is authorized to do business in this State. It has unincorporated branches in Virginia which operate as "semi-autonomous bodies" under the general jurisdiction of the parent organization. The Virginia State Conference of NAACP Branches is a voluntary unincorporated association of branches licensed by the NAACP in this State.

The articles of incorporation of the NAACP state its principal objectives as follows:

" * * * [T]o promote equality of rights and eradicate caste or race prejudice among the citizens of the United States; to advance the interest of colored citizens; to secure for them impartial suffrage; and to increase their opportunities for securing justice in the courts, education for their children, employment according to their ability, and complete equality before the law.

"To ascertain and publish all facts bearing upon these subjects and to take any lawful action thereon; together with any and all things which may lawfully be done by a membership corporation organized under the laws of the State of New York for the further advancement of these objects."

The first contention of the appellants is that the Hustings Court of the city of Richmond is not authorized to order the is-

suance of the subpoenas. The Act empowers the Committee to procure a subpoena by motion "before the circuit or corporation court having jurisdiction of the person or documents whose attendance or production is sought." The appellants argue that while the words "corporation court" embrace hustings courts (Code, § 1-13(4)), no such court has jurisdiction to issue a subpoena in aid of an extra-judicial investigation. Moreover, they say, the jurisdiction of the Hustings Court of the city of Richmond is fixed and limited by the provisions of Code, § 17-153, and no provision is there found for the issuance of subpoenas for such purpose.

The ready answer to this contention is that while the Constitution authorizes the creation of circuit and corporation courts, it does not fix or limit their jurisdiction. Consequently, they have such jurisdiction as is or may be conferred upon them by the General Assembly. Here the Act expressly confers upon the specified court to which application is made, jurisdiction and authority to compel the attendance of witnesses or the production of documents before the Committee by the issuance of the necessary subpoena.

The testimony of Banks shows that the documents sought to be produced are in his possession in the city of Richmond where he resides. Hence, the Hustings Court of that city had the required *territorial* "jurisdiction of the person or documents." Obviously the word "jurisdiction," as here used, means the territory in which the power of the court is to be exercised. See *McCullough* v. *Scott*, 182 N. C. 865, 109 S. E. 789, 793.

The appellants next contend that the issuance of subpoenas ex parte is not authorized by the Act, and if so, the Act violates the Due Process Clauses of the Fourteenth Amendment to the Federal Constitution and the Constitution of Virginia. Both contentions are without merit.

While it is true that the Act does not expressly authorize the issuance of the required subpoena without notice to the intended witness and a hearing on the application, it does not require such notice. Had the General Assembly intended that a subpoena should be issued only after notice and hearing, it would have said so.

It will be recalled that the Act also authorizes the Committee to procure a subpoena compelling the production of documents by following the procedure prescribed in Code, § 30-10, *supra.* That statute does not require prior notice to the intended witness and a hearing before the issuance of a subpoena.

Similarly, the issuance of a subpoena duces tecum under Code, § 8-301, requires no prior notice or hearing. Upon a motion supported by affidavit that a book, writing or document in the possession of a person not a party to the matter in controversy is material and proper to be produced before a court, the court may, and usually does, as a matter of course, order the issuance of a subpoena duces tecum to compel such production.

The usual and approved method of testing the validity of a subpoena duces tecum, where issued without a previous judicial determination of the sufficiency of the application, is by a motion to quash or vacate. 58 Am. Jur., Witnesses, § 28, pp. 37, 38. See also, 130 A. L. R. 327, Annotation; Rule 45, Federal Rules of Civil Procedure.

"The motion or application to set aside or vacate the subpoena gives the court the opportunity to examine the issues raised by the pleadings in the cause, and in the light thereof to determine the apparent relevancy of the evidence which is sought to be elicited, and also to pass on the question whether an order for the production of the document in question would constitute an unlawful invasion of privacy. * * *" 97 C. J. S., Witnesses, § 25-j, p. 397.

Such was the procedure in the present case. Upon the application of the Committee, supported by the affidavit of its chairman, the lower court found it "proper and necessary" to the accomplishment of the purposes of the Committee that the documents be produced, and ordered the issuance of the subpoenas. The validity of the subpoenas was challenged and determined in the proceeding on the motion to quash. Pending the outcome of that proceeding the required documents and information have not been produced.

From what has been said it clearly appears that the procedure here followed fully satisfies the due process requirements of the Fourteenth Amendment and § 11 of the Virginia Constitution. It is universally held that the requirement of due process is satisfied where an interested party is given a full opportunity to be heard before the matter is finally determined. 16A C. J. S., Constitutional Law, § 622, pp. 825, 826; 12 Am. Jur., Constitutional Law, § 611, p. 306; *Lichter* v. *United States*, 334 U. S. 742, 791, 792, 68 S. Ct. 1294, 92 L. ed. 1694. For an application of the principle to a subpoena duces tecum, see *Consolidated Rendering Co.* v. *Vermont*, 207 U. S. 541, 551, 28 S. Ct. 178, 52 L. ed. 327, 12 Ann. Cas. 658.

[■ The appellants contend that the required disclosure of the in-

formation sought by the subpoenas violates their rights protected by the Federal and State Constitutions. It is suggested that the request for the large volume of information is unreasonable and immaterial to the Committee's lawful purposes. However, as has been said, they have already voluntarily furnished much of the information and we are not now concerned with whether they should have done so. To repeat, as we read their briefs, the appellants are here objecting to the disclosure of the names and addresses of the members of the NAACP, and its "voluntary workers and associates," in this State. Consequently, we shall confine our inquiry to whether there is any constitutional prohibition against the requirement that they disclose this information.

As has been said, the Act creating the Committee directed it to "investigate and determine the extent and manner in which the laws of the Commonwealth relating to the administration of justice are being administered and enforced and shall specifically direct its attention to the administration and enforcement of those laws relating to champerty, maintenance, barratry, running and capping and other offenses of any other nature relating to the promotion or support of litigation by persons who are not parties thereto."

At the same extra session the General Assembly passed an emergency act defining the crime of barratry, prohibiting such offense, and the aiding and abetting such offense. (Acts 1956, Ex. Sess., ch. 35, p. 36; Code, 1956 Add. Supp., § 18-349.25, etc.) The Act defines "barratry"[2] as the "offense of stirring up litigation." It defines "stirring up litigation" as "instigating or attempting to instigate a person or persons to institute a suit at law or equity."

The Committee insists that the disclosure of the names of the members of the NAACP and its voluntary workers and associates in

[2] Barratry is an offense at common law. It is defined as frequently stirring up suits and quarrels either at law or otherwise. 9 C. J. S., Barratry, § 1, p. 1546; 10 Am. Jur., Champerty and Maintenance, § 3, p. 551.

Champerty, likewise a common-law offense, is defined as an agreement whereby a person without interest in another's suit undertakes to carry it on at his own expense, in whole or in part, in consideration of receiving, in the event of success, a part of the proceeds of the litigation. 14 C. J. S., Champerty and Maintenance, § 1-a, p. 356; 10 Am. Jur., Champerty and Maintenance, § 2, p. 550.

Maintenance exists when a person without interest in a suit officiously intermeddles therein by assisting either party with money or otherwise to prosecute or defend it. 14 C. J. S., Champerty and Maintenance, § 1-b, p. 357; 10 Am. Jur., Champerty and Maintenance, § 1, pp. 548, 549.

These several offenses are prohibited by statute in many states.

this State is relevant to its inquiry. In overruling the motion to quash, the lower court necessarily found that such information was relevant and there is no showing to the contrary by the appellants. We cannot say as a matter of law that the trial court's ruling was wrong. The Committee was directed to investigate "the extent and manner" in which certain laws relating to the administration of justice are being "administered and enforced." This direction included an inquiry into whether these laws were being violated, and if so, whether the corporate appellant or its unincorporate associate or some of their members were among the offenders.

The legislature has inherent power to appoint committees as means of obtaining necessary information to aid it in preparing and enacting wise and needful laws. 49 Am. Jur., States, etc., § 40, pp. 257, 258.

In 97 C. J. S., Witnesses, § 25-j, pp. 397, 398, it is said that in determining whether the production of documents should be enforced, "it is proper to consider whether the subpoena duces tecum calls for the production of specific documents or proof, and, if so, whether that proof is prima facie sufficiently relevant to justify enforcing its production. In general, whether the subpoena shall be set aside is a matter within the discretion of the court. While in a proper case the subpoena may, or should be, quashed or vacated, such relief will be *granted only on a very clear showing of the right thereto;* and the subpoena should not be quashed or set aside, on the ground that the evidence called for by it is not relevant or material, in a close or doubtful case, but *only where the futility of the process to uncover anything useful or legitimate is inevitable or obvious.*" (Italics supplied). See also, *In re Edge Ho Holding Corp.*, 256 N. Y. 374, 176 N. E. 537, 539.

These principles were applied by the highest court of New York in *In re Joint Legislative Committee, etc.*, 285 N. Y. 1, 32 N. E. 2d 769. That court affirmed an order refusing to vacate a subpoena duces tecum requiring the production of a membership list of a teachers' union before a legislative committee empowered to investigate the educational system of the State of New York. Because of the similarity of the issues presented, what was said in that case is particularly interesting in the case now before us. In refusing to vacate the subpoena the court pointed out that, "The law-making power given to the Legislature authorizes it, by inquiry, to ascertain facts which affect public welfare and the affairs of government. Such

power of inquiry, with process to enforce it, is an essential auxiliary to the legislative function. * * * "

Continuing, it said: "In the present proceeding, as we have seen, we must assume that the legislative inquiry was well intended. If a subpoena is to be quashed in advance of a committee hearing, upon a forecast of the testimony sought and arguments as to its probable effect, the purpose of the inquiry may be thwarted. We cannot say as matter of law, upon the record at hand, that the subpoena now challenged would be futile as an aid to the legislative inquiry instituted by the 'Joint Resolution. It is only when futility of such process is inevitable or obvious that there must be 'a halt upon the threshold' of the inquiry." (Citing *In re Edge Ho Holding Corp.*, *supra*.) 32 N. E. 2d, at page 771.

Similarly, in the present case it is not obvious nor have the appellants shown that the futility of the process is inevitable or that the desired evidence is immaterial to the subject of the Committee's inquiry.

While such a legislative committee has broad powers in calling for the production of relevant evidence, such power is subject to constitutional restraints designed for the protection of the rights of the individual. 81 C. J. S., States, § 43, p. 961.

In their brief the appellants expressly disavow any claim of privilege against self incrimination under § 8 of the Virginia Constitution, or under the Fifth Amendment to the Constitution of the United States.[3] Neither do they rely upon the unreasonable searches and seizures provision of the Fourth Amendment to the Federal Constitution.[4] They claim that compelling them to disclose the names of their members, associates and workers deprives them of their right of privacy in violation of the Due Process Clauses of the Fourteenth Amendment and § 11 of the Virginia Constitution.

We need not stop to inquire whether the corporate appellant and its unincorporated Conference of Branches may claim the protection of this provision of the Fourteenth Amendment. See *United States v. Morton Salt Co.*, 338 U. S. 632, 651, 652, 70 S. Ct. 357, 94 L. ed. 401. For it is well settled that the right of privacy protected by the

---

[3] The Fifth Amendment does not extend to the actions of a state or its agencies. *Adamson* v. *People of the State of California*, 332 U. S. 46, 50, 51, 67 S. Ct. 1672, 91 L. ed. 1903.

[4] The Fourth Amendment likewise does not extend to the actions of a state or its agencies. *Wolf* v. *People of the State of Colorado*, 338 U. S. 25, 33, 69 S. Ct. 1359, 93 L. ed. 1782.

Constitution is subject to the reasonable exercise of the state's police power. 11 Am. Jur., Constitutional Law, § 262, p. 998 ff.; 16A C. J. S., Constitutional Law, § 571, p. 588 ff.; *New York ex rel. Bryant* v. *Zimmerman,* 278 U. S. 63, 72, 49 S. Ct. 61, 73 L. ed. 184.

The investigation by a legislative committee within the scope of its prescribed duties is universally recognized as a reasonable exercise of such police power. Consequently, the production of papers material to such an inquiry may not be refused merely because they are private.

■ Nor is there any substance to the appellants' contention that the required disclosure of this information violates the Privileges and Immunities Clause of the Fourteenth Amendment. As is said in 12 Am. Jur., Constitutional Law, § 448, p. 92: "The Fourteenth Amendment deals only with the rights of citizens of the United States as such, and the privileges and immunities protected thereby are those of citizens of the United States, as distinguished from the privileges and immunities of the citizens of a state as such. It places the privileges and immunities of citizens of the United States under the protection of the Federal Constitution and leaves the privileges and immunities of citizens of a state under the protection of the state Constitution."

*New York ex rel. Bryant* v. *Zimmerman, supra,* involved the constitutionality of a New York statute requiring membership corporations and unincorporated associations, with certain exceptions, to file with the Secretary of State a sworn copy of their constitutions, by-laws, rosters of membership, etc. Against the contention that this statute violated the Privileges and Immunities Clause of the Fourteenth Amendment, it was held that, "If to be and remain a member of a secret, oath-bound association within a state be a privilege arising out of citizenship at all, it is an incident of state rather than United States citizenship; and such protection as is thrown about it by the Constitution is in no wise affected by its possessor being a citizen of the United States." 278 U. S., at pages 71, 72.

Nor do we agree with the suggestion in the appellants' brief that the required disclosure of the names of their members and associates "would be necessarily coercive" and therefore a restraint on their freedom of speech or right of assembly guaranteed by the First Amendment. No limitation by license or otherwise on the activities of the appellants is here involved. This is an inquiry into such activities and the identity of those who are involved therein, to ascer-

tain whether they are engaged in unlawful practices. Clearly, this is within the State's police power.

■ The appellants next contend that the disclosure of their members constitutes an unlawful search and seizure prohibited by § 10 of the Virginia Constitution. That section provides, "That general warrants, whereby an officer or messenger may be commanded to search suspected places without evidence of a fact committed, or to seize any person or persons not named, or whose offense is not particularly described and supported by evidence, are grievous and oppressive, and ought not to be granted."

In *McClannan* v. *Chaplain*, 136 Va. 1, 116 S. E. 495, we held that "this section merely adopts and makes unchangeable by the legislature the common law" prohibition against unreasonable searches and seizures. "It is the personal and political liberty of the citizen, especially the privacy of his home and his papers, which is sought to be protected by the common law rule against 'unreasonable' search and seizure * * * ." 136 Va., at pages 15, 16.

It is generally held that the compulsory production of books and papers, described with reasonable particularity, covering a reasonable period of time, and relevant to the subject of the inquiry, does not constitute an unreasonable search and seizure. 47 Am. Jur., Searches and Seizures, §§ 59, 60, pp. 539, 540; 79 C. J. S., Searches and Seizures, §§ 36, 37, pp. 799-805.

Under these principles we hold that the production of the required names does not constitute an unlawful search and seizure within the prohibition of § 10 of the Virginia Constitution.

■ The appellants contend that the Act which creates the Committee and outlines its powers is unconstitutional and void because, they say, in authorizing it to "direct its attention to the administration and enforcement" of certain laws, and in giving it the "plenary power to oversee" such administration and manner of enforcement, the General Assembly has conferred on the Committee executive functions in contravention of § 39 of the Virginia Constitution. That section requires that except as is provided in the Constitution, "the legislative, executive and judicial departments shall be separate and distinct." The argument is that the power to "direct its attention to" and to "oversee" the administration of such laws connotes the power to "enforce" them.

A reading of the Act as a whole shows that there is no substance to this contention. The obvious purpose of the Act is to authorize and

direct the Committee to *investigate and report on* the manner in which such laws are administered and enforced by the proper officials. The Committee is given no power of execution or enforcement. Obviously, the fact that the executive department is charged with the function of executing the laws does not prohibit the legislative department from inquiring into the manner and result of such enforcement.

The final contention of the appellants is that the entry of the orders directing the issuance of the subpoenas was an abuse of the court's sound judicial discretion. It is argued that the offenses of barratry, champerty, maintenance and the like are archaic and obsolete; that there is no real need to enact laws dealing with them; and that the real purpose of the Act creating the Committee and authorizing its inquiry is to harass the NAACP and its branches and to hinder or obstruct it in its worthy objectives.

It is, of course, well settled that it is not within the functions of the judiciary to inquire into the motives which impel the legislature to enact laws. 11 Am. Jur., Constitutional Law, § 141, p. 818 *ff.*; 4 Mich. Jur., Constitutional Law, § 55, p. 142, and cases there collected; *Sonzinsky* v. *United States,* 300 U. S. 506, 513, 514, 57 S. Ct. 554, 81 L. ed. 772.

But aside from that, it is axiomatic that the objectives of the appellants, however worthy they may be, may not be attained by unlawful means. As has been said, barratry, champerty, maintenance and like offenses are prohibited at common law. Many of the states, like Virginia, have statutes prohibiting such offenses. Moreover, Rule 28 of the Canons of Professional Ethics, incorporated in the Rules for Integration of the Virginia State Bar and approved by this court, provides that stirring up litigation, directly or through agents, "is not only unprofessional, but it is indictable at common law," and is an offense for which the "offender may be disbarred." See 172 Va. xxviii; 194 Va. clii.

It was for the General Assembly to determine what laws should be enacted with respect to these matters.

On the whole we find no error in the lower court's refusal to quash or vacate the subpoenas, and the order appealed from is

*Affirmed.*