323 F.2d 597
 Joseph A. JORDAN, Jr., E. A. Dawley, Jr., and L. W. Holt, Appellants,
v.
J.C. HUTCHESON, Chairman, Virginia's Legislative Committee
on Offenses Against the Administration of Justice, William
King, consel for the Committee, Honorable Charles Leavitt,
City Sergeant, and Committee on Offenses Against the
Administration of Justice, Appellees.
 No. 8834.
 United States Court of Appeals Fourth Circuit.
 Argued April 1, 1963.
Decided Sept. 17, 1963.
 
 Shirley Fingerhood, New York City (Melvin L. Wulf and Sanford M. Katz, New York City, and Jordan, Dawley & Holt, Norfolk, Va., on brief), for appellants.
 William H. King, Richmond, Va. (Robert Y. Button, Atty. Gen., of Virginia, on brief), for appellees.
 Before SOBELOFF, Chief Judge, and BOREMAN and J. SPENCER BELL, Circuit judges.
 J. SPENCER BELL, Circuit Judge.
 
 
 1
 This is a class action brought by three Negro attorneys of Norfolk Virginia, against a Committee of the Virginia State Legislature, its Chairman, its counsel, and a process agent of the City of Norfolk for equitable relief under the provisions of the Civil Rights Acts, 42 U.S.C. 1981 and 1983. Federal jurisdiction is asserted under 28 U.S.C. 1343(3). The complaint prays for temporary and permanent injunctions from 'any further unlawful action to harass and intimidate' the three plaintiff lawyers and those of their clients[1] who were served with subpoenas and writs by the defendants on September 17, 1961; for nominal damages and costs; for an order requiring the prosecution of the defendants Huthcheson and King for violation of 18 U.S.C. 241 and 242, and for general relief.
 
 
 2
 The complaint alleges that the defendants are acting as part of a conspiracy engaged in by the elected officials of Virginia to intimidate, discourage and impede the plaintiffs and all Negro citizens of Virginia from using the courts as a means of ending the practices of racial segregation in that state. It further alleges that the Legislature created the defendant committee for the sole purpose of harassing and intimidating the plaintiffs in their efforts as lawyers to serve the cause of desegregation. Specifically, it alleges that in furtherance of this unlawful objective, the Committee and its agents have: investigated the friends and clients of the plaintiffs; urged and asked their clients to abandon them; raided the offices of plaintiffs and their clients seeking to gather confidential papers and notes; published statements naming the plaintiffs as violators of the law, and that defendants threaten to continue such practices.
 
 
 3
 The District Court dismissed the complaint on the grounds both that it lacked jurisdiction and that the complaint failed to state a cause of action. It noted that the defendants had agreed to refrain from any further action against the plaintiffs until this appeal is decided. In its supporting opinion, Jordan v. Hutcheson, 208 F.Supp. 131 (E.D.V.a.1962), the Court stated that the controlling question was 'whether a federal court has the authority to enjoin a state legislative committee from performing its duties under a statute which has been declared constitutional by the highest court of the state,[2] on the grounds that (1) the purpose or 'function' for which the committee was created is unconstitutional, and (2) the committee has acted or is authorized to act beyond the scope of the legislative function in assuming powers properly reserved to the executive or judicial branches of the government.'
 
 
 4
 We think this statement of the issues begs the question. The extent to which the state through its legislative power may intrude upon a citizen's rights becomes a matter for the consideration of the federal courts when such conduct invades the citizen's constitutional privileges. Whereupon the federal courts are commanded to act under the selfexecuting provisions of the Fourteenth Amendment. We submit it would be impracticable to test the constitutionality of the state's conduct without considering its purpose.[3] With all due respect, since this is a federal question, the opinion of the Supreme Court of Appeals of Virginia would not be binding on the federal courts. N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). When the court does act under the Fourteenth Amendment it must weigh the state's interest in the product of this effort against the interest of the citizen in his constitutional rights.[4] Only if the state's interest is overriding and compelling will the courts condone an invasion of those rights for which the plaintiffs here seek protection. Whether or not the Committee has invaded the executive or judicial functions of the state's government is no concern of the federal courts, as we shall attempt to show later. Whether the Committee has acted beyond the of its authority is of interest to the court, for any conduct which is not authorized by state law would not have the cloak of legislative immunity and thus would not call for the deference which the principles of federalism grant to state action. Such unauthorized conduct would, however, if done under color of state law, custom or usage come within the prohibition of 42 U.S.C. 1983.
 
 
 5
 The real question at issue on this appeal is whether the complaint alleges facts which if true constitute a violation of the plaintiffs' First Amendment rights, and if so whether a federal court has the power to enjoin such conduct as state action under the Fourteenth Amendment or the provisions of 42 U.S.C.A. 1983. We think the court must consider this question in the light of the Supreme Court's decision in N.A.A.C.P. v. Button Supra, which has determined that Virginia has no overriding and compelling interest in forcing the disclosure of information which the complaint alleges the defendants seek.
 
 
 6
 We are remanding the case in order that the District Court may reconsider its opinion in the light of the opinion of this court and the decision of the Supreme Court in N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed. 405, which was decided subsequent to the District Court's opinion and is pertinent to the issues herein. It is obvious, of course, that in reviewing the case at this stage the plaintiffs are entitled to a liberal construction of their pleadings, the truth of which we must presume to be conceded. Clark, Attorney General v. Uebersee Finanz-Korporation, 332 U.S. 480, 68 S.Ct. 174, 92 L.Ed. 88 (1947).
 
 
 7
 There can be no question that the District Court had jurisdiction to entertain this suit. The plaintiffs have asserted rights, the correct decision of which depends upon the construction and application of the Constitution and laws of the United States. Miller v. Long 152 F.2d 196 (4 Cir., 1946); Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 LEd. 1324 (1943); Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Bock v. Perkins, 139 U.S. 628, 630, 11 SCt. 677, 35 L.Ed. 314 (1891). Freedom of speech and of assembly are among the rights secured by the Constitution and the terms of statutes giving federal district courts original jurisdiction of suits to redress the deprivation of such rights. Hatfield v. Bailleaux, 290 F.2d 632, 636 (9 Cir., 1961), cert. denied, 368 U.S. 862, 82 S.Ct. 105, 7 L.Ed.2d 59. Freedom from race discrimination is clearly within the rights so protected. Bush v. Orleans Parish School Board, 188 F.Supp. 916 (D.C.E.D.La.1960), aff'd, 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806;28 U.S.C.A. 1343(3), (4). The amount in controversy is immaterial, Douglas v. City of Jeannette, supra, as such rights are inherently incapable of pecuniary valuation. Hague v. Committee for Industrial Organization, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).
 
 
 8
 The concept of federalism: i.e., federal respect for state institutions, will not be permitted to shield an invasion of the citizen's constitutional rights. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Certainly this principle has not shielded the activities of the executive and judicial branches of the state from interdiction when constitutional rights are involved. Bell v. Hood, supra. In Bush v. Orleans Parish School Board, supra, the court enjoined a long list of state executive officers beginning with the Governor. In United States v. Wood,295 F.2d 772 (5 Cir., 1961), cert. denied, 369 U.S. 850, 82 S.Ct. 933, 8 L.Ed.2d 9, the court enjoined criminal prosecution. Cf. Terrace v. Thompson,263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255 (1923); Packard v. Banton, 264 U.S. 140, 44 S.Ct. 257, 68 L.Ed. 596 (1924); Evers v. Dwyer, 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958). And in the following cases, state and municipal boards were enjoined: Williams v. Kansas City, Mo., 104 F.Supp. 848 (D.C.Mo.1952); Gonzales v. Sheely, 96 F.Supp. 1004 (D.C.Ariz.1951); City of Greensboro v. Simkins, 246 F.2d 425 (4 Cir., 1957); Holmes v. Danner,191 F.Supp. 394 (D.C.Ga.1961). Although the federal courts will recognize and respect the state's right to exercise through its legislature broad investigatory powers, nevertheless these powers are not unlimited and it remains the duty of the federal courts to protect the individual's constitutional rights from invasion either by state action or under color thereof. Especially is this true in the sensitive areas of First Amendment rights and racial discrimination. Where there exists the clear possiblility of an immediate and irreparable injury to such rights by state legislative action the federal courts have exercised their equitable powers including the declaratory judgment and the injunction. See the long series of injunctions and orders issued in Bush v. Orleans Parish School Board, 138 F.Supp. 337 (D.C.E.D.La.1956), aff'd, 242 F.2d 156 (5 Cir., 1957), cert. denied, 354 U.S. 921, 77 S.Ct. 1380, 1 L.Ed.2d 1436 (1957); 163 F.Supp. 701 (D.C.E.D.La.1958), 1958), aff'd, 268 F.2d 78 (5 Cir., 1959); 187 F.Supp. 42 (D.C.E.D.La.1960); 188 F.Supp. 916 (D.C.E.D.La.1960); 190 F.Supp. 861 (D.C.E.D.La.1960); 194 F.Supp. 182 (D.C.E.D.La.1961), aff'd per curiam, Tungwall v. Bush, 367 U.S. 907, 81 S.Ct. 1926, 6 L.Ed.2d 1250 (1961). In 191 F.Supp. 871 (D.C.E.D.La.1961), aff'd per curiam, Denny v. Bush, 367 U.S. 908, 81 S.Ct. 1917, 6 L.Ed.2d 1249 (1961), the three judge district court issued an injunction against the Louisiana Legislature and the individual members thereof, restraining them from enforcing certain acts declared by the court to be unconstitutional or in any way interfering with the school board's compliance with the court's previous desegregation orders. In United States v. Owlett, 15 F.Supp. 736 (D.C.M.D.Pa.1936) a state legislative committee was enjoined from investigating the activities of a federal agency.
 
 
 9
 Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), does not support the defendants' arguments.[5] That case holds that legislators when acting within the scope of their authority are not liable for money damages, notwithstanding their conduct may have been motivated by personal spite or vindictiveness. Mr. Justice Frankfurter was careful to limit the decision to the facts of that case. He said: 'We have only considered the scope of the (legislative immunity) privilege as applied to the facts of the present case'. Far from supporting the defendants' arguments against the court's power or duty to grant equitable relief, we think the fact that plaintiffs may not recover money damages could be considered by the court.
 
 
 10
 We will not attempt to review in detail the long history of the litigation between this committee, its predecessor, and the various individuals and organizations active in the struggle against segregation in Virginia[6] The Committee was initially established in 1956[7] At the same time the state laws on champerty, maintenance, barratry, running and capping were revised and the definitions of these offenses enlarged to cover the activities of these civil rights organizations. The Committee was authorized to investigate the manner in which the laws of the Commonwealth relating to the administration of justice were being observed and particularly those relating to the statutorily redefined offenses of champerty, maintenance, etc., and to report to the 1958 Legislature with recommendations. In 1958, the Committee was made permanent and its area of special attention enlarged to include the Virginia common law offenses of champerty, barratry, etc., an obvious attempt to escape the attack then being made on the constitutionality of the statutory definitions. The Legislature's original attempts in 1956 to enlarge the common law definitions of champerty and barratry have practically all been declared unconstitutional since that date. Judge Soper in N.A.A.C.P. v. Patty, 159 F.Supp. 503, 511 (D.C.E.D.Va.1958) (a three judge court), reviewed the history of these statutes and others passed at the 1956 extra session, and found that they were expressly passed for the purpose of impeding the integration of the races in the public schools of Virginia. There can be no doubt that this Committee and its predecessor were originally created as part of this plan, notwithstanding counsel's present assertions that it is now concerned with other areas of activity including legal ethics, communist infiltration, the unauthorized practice of law, etc.
 
 
 11
 In this historical setting, we do not think that a federal court of equity is confined to the literal words of the 1958 revisal of the statute which created the Committee in considering the rights of the plaintiffs in this action[8] The court is not required to wear blinders, it may consider this statute in its relation to all the others as a part of the state action now expressed in the activities of the Committee of which the plaintiffs complain. While it is true that the court is not concerned with the motives of either the Legislature or the Committee members, it may nevertheless 'look to the origins of the state law and the setting in which it operated * * *' to determine what part of the Committee's authorized activities are constitutional and what are not, and it may examine the acts complained of by the plaintiffs to determine if they are within the authorized constitutional activities of the Committee[9] Cf. N.A.A.C.P. v. Button, 371 U.S. 415, 445, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) et seq. (concurring opinion of Justice Douglas).
 
 
 12
 We have no doubt that the court in reviewing its decision will find that there is a wide area under the 1958 statutes wherein the Committee may constitutionally operate, but the court may also find that the decision in N.A.A.C.P. v. Button, supra, has carved out an area in which the Committee may not intrude. If such should be true and the allegations of the complaint were supported by evidence, there is no reason why a decree may not be fashioned which would protect this area of the plaintiffs' activities while allowing the Committee to pursue its legitimate activities. N.A.A.C.P. v. Button stands for more than was conceded by the Committee's brief. It not only holds that the organizations named may advise individuals to secure particular lawyers to advocate their constitutional rights, it also holds that these organizational activities are constitutionally privileged under the First Amendment and must be respected by the state under command of the Fourteenth. This command is also clearly set forth in Gibson v. Florida Committee, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963), where a similar committee sought to obtain information concerning the membership records of the N.A.A.C.P. The states have been told in numerous decisions that neither ingenuous nor enginous devices to interfere with the exercise of these rights will be tolerated, and it would be ironic indeed if under the guise of legislative privilege a committee could accomplish the very thing that the Legislature itself was not permitted by direct statutory approach. Furthermore, the court also said in the Button case and the Gibson case that the state must show an overriding and compelling interest before it is allowed to intrude upon constitutional rights and in the Button case it added that Virginia had shown no such interest in regulating the legal profession as would justify its statutory effort to obtain the desired information or impede the activity in question.
 
 
 13
 We also think the court should consider whether the alleged acts of dissuading plaintiffs' clients from employing them and 'raiding' the plaintiffs' offices were not in fact beyond the scope of the Committee's authorized activity. The courts would not insulate the plaintiffs against investigation into their ethical conduct in common with that of all of the lawyers of Virginia but against such efforts must be weighed the plaintiffs' allegations (conceded for the purposes of this appeal) that the defendants are in fact seeking information which Button says they are not entitled to and attempting to impede activity which that case has held to be constitutionally protected. While the courts will not ordinarily render wholly prospective equitable relief against legislative action, the past conduct of the Committee is certainly subject to the court's scrutiny and may form the basis for relief.
 
 
 14
 In protecting the constitutional rights of individuals vis-a-vis state action, the federal courts are not concerned with the division of legislative, executive and judicial functions within the governmental structure of the state[10] As heretofore pointed out, it is the doctrine of federalism; i.e., federal respect for the institutions of state governments, which causes our courts to move with care in this direction. Separation of powers is, however, the principle involved when federal courts come to consider the activities of the legislative branch of the federal government. While these cases may be relevant in their treatment of the extent of the legislative investigatory powers, they are not authority for treatment of the rights of the plaintiffs here under the provisions of the Fourteenth Amendment or under the provisions of 42 U.S.C.A. 1983, where an equitable remedy is specifically granted against action under color of state law without any limitations as to the form which that action may take, whether legislative, executive or judicial. In Wheeldin v. Wheeler, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (decided June 3, 1963), this distinction was specifically pointed out. In Pauling v. Eastland, 109 U.S.App.D.C. 342, 288 F.2d 126 (1960), the complaint alleged only that the petitioner had been told by the subcommittee chairman that he should appear on a certain date and bring certain papers. The court held that no justiciable act had occurred which would give it power to enjoin the Committee. No reasons were advanced by the petitioner to justify an assumption that the Committee would not accord him due process in its questioning. Nor were prior acts of the Committee alleged, such as plaintiffs' allegations of harassment and intimidation in this case; actions against which the plaintiffs could not be adequately protected by contempt proceedings. Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), does not support the defendants' position. In that case a three judge court enjoined the Civil Rights Commission on the grounds that it had exceeded the authority granted it by Congress to make rules. The Supreme Court did not deny the power of the district court to enjoin the Commission. In Mins v. McCarthy, 93 U.S.App.D.C. 220, 209 F.2d 307 (1953) a per curiam opinion held that the court would not enjoin a congressional committee or suspend its subpoena ad testificandum merely because it does not specify what questions will be asked of the witness. In Fischler v. McCarthy, 218 F.2d 164 (2 Cir., 1954) the circuit court sustained the district court's dismissal for lack of venue. The district courts' obiter dictum to the effect that the court had no power to enjoin a Committee of the Congress in advance of a contempt action was based on the doctrine of separation of powers and plaintiff's failure to allege any injury not adequately protected in a contempt action.
 
 
 15
 Nor do we think there is any basis for abstention in this case. The statute, 42 U.S.C. 1983, under which plaintiffs sue, involved federal rights. The federal courts are provided for the accommodation of these rights and the fact that the state courts are also available for the protection of plaintiffs' constitutional rights does not require the federal courts to abstain.
 
 
 16
 'It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.' Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 481-482, 5 L.Ed.2d 492 (1961).
 
 
 17
 McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (decided June 3, 1963); Lee v. Hodges, 321 F.2d 480 (4 Cir., 1963). Furthermore, the courts of Virginia had considered the constitutionality of the Act of 1956 creating this Committee's predecessor. National Ass'n. for the Adv. of C.P. v. Committee on Offenses, 199 Va. 665, 101 S.E.2d 631 (1958). The Virginia court had this Act before them in N.A.A.C.P. v. Committee on Offenses, 201 Va. 890, 114 S.E.2d 721 (1960), where the court declared itself unable to enjoin the Committee under state law.
 
 
 18
 In summary, we would agree with the district judge that no federal court should enjoin a state legislative committee so long as it is acting within the scope of the authority granted it by the legislature and its actions are not interdicted by the Constitution of the United States. However, the allegations of the complaint here raise a question of the violation of plaintiffs' First Amendment rights by both past and threatened action. However legitimate the Committee's interest in the subjects of barratry, champerty, maintenance, running and capping among the legal profession in general in Virginia, the Committee may not under the guise of investigating such activity invade the plaintiffs' First Amendment rights without showing a compelling state interest which is not, of course, evident on this record to date. Furthermore, the court may consider the state's over-all activity in this area-- it is not confined to the literal words of the 1958 statute creating the successor committee. The courts will not insulate the plaintiffs against justified investigations into the ethical standards of their professional conduct. It can and should protect the activities of the plaintiffs and their clients in maintaining the privacy of their First Amendment activities against irreparable injury unless and until there is a reasonably demonstrated factual basis for assuming that they are guilty of the offenses which the Committee is interested in investigating. Until the case is heard on its merits no adequate foundation can exist which would justify the demands which the plaintiffs allege the defendants have made upon them for such information. Without such foundation the strong associational interest in maintaining the privacy of membership and program activity of groups engaged in a constitutionally protected free trade in ideas and beliefs may not be infringed upon. Gibson v. Florida Legislative Comm., 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963). The Committee's broad powers, the severe penalties which may be invoked for contempt, its authority to function through one member and to meet at any time, anywhere within the state, constitute it a powerful weapon if abused. The federal courts are not helpless to protect against the abuse of such power by equitable decrees.
 
 
 19
 Remanded.
 
 
 
 [1]
 Plaintiffs allege that among their clients are The Congress of Racial Equality, The Southern Christian Leadership Conference, The Lynchburg Improvement Association, The Petersburg Improvement Association, and other groups actively engaged in attacks upon racial segregation in Virginia
 
 
 [2]
 See National Association for the Advancement of Colored People, Inc. v. Committee on Offenses, 199 Va. 665, 101 S.E.2d 631, where the Virginia Supreme Court of Appeals upheld the Committee's subponena power and the constitutionality of the Act of 1956 creating this Committee's predecessor. The Court also upheld the Committee's right to subpoena the membership records of the N.A.A.C.P. and its affiliated groups which included the plaintiffs' clients in this case. The Court recognized that the Committee's powers were subject to constitutional restraint under the Fourteenth Amendment. But see N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (Jan. 14, 1963), holding that the statute defining barratry under which that Committee was proceeding was unconstitutional because it invaded plaintiffs' right of privacy under the First Amendment
 
 
 [3]
 See footnote 9, infra
 
 
 [4]
 In speaking of this process Mr. Justice Frankfurter (Justice Harlan concurring) said: 'To be sure, this is a conclusion based on a judicial judgment in balancing two contending principles-- the right of a citizen to political privacy, as protected by the Fourteenth Amendment, and the right of the State to self-protection. And striking the balance implies the exercise of judgment. This is the inescapable judicial task in giving substantive content, legally enforeced, to the Due Process Clause, and it is a task ultimately committed to this Court.' Sweezy v. New Hampshire, 354 U.S. 234, 266, 77 S.Ct. 1203, 1219-1220, 1 L.Ed.2d 1311
 
 
 [5]
 The Justice's remarks concerning separation of powers must be considered in the light of his concurring opinion rendered five years later in Sweezy v. New Hampshire, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1956), where he rejected the doctrine of separation of powers in considering state legislative activity. See footnote 10, infra
 
 
 [6]
 Cf. N.A.A.C.P. v. Patty, 159 F.Supp. 503 (D.C.E.D.Va.1958); Harrison v. N.A.A.C.P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); N.A.A.C.P. v. Harrison, Chancery Causes No. B-2879 and No. B-2880, Aug. 31, 1962; N.A.A.C.P. Legal Defense & Educational Fund, Inc. v. Harrison, 202 Va. 142, 116 S.E.2d 55 (1960); N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405. See also N.A.A.C.P. v. Committee on Offenses, 199 Va. 665, 101 S.E.2d 631; N.A.A.C.P. v. Committee on Offenses, 358 U.S. 40, 79 S.Ct. 24, 3 L.Ed.2d 46; N.A.A.C.P. v. Committee on Offenses, etc., 201 Va. 890, 114 S.E.2d 721
 
 
 [7]
 The Committee has broad plenary powers. Any member of the Committee may issue subpoenas requiring the attendance of witnesses or production of records and may compel attendance by court order. Failure to attend or answer questions or produce records subjects one to a fine of one thousand dollars or imprisonment for one year or both. Va. Code of 1950 Chap. 5 30-42 to 30-51
 
 
 [8]
 Cf. Hall v. St. Helena Parish Board, 197 F.Supp. 649, 652 (D.C.1961), aff'd per curiam, 368 U.S. 515, 82 S.Ct. 529, 7 L.Ed.2d 521
 
 
 [9]
 N.A.A.C.P. v. Patty, D.C., 159 F.Supp. 503, 515 n. 6, where Judge Soper said in reviewing these same statutes:
 '6. While it is well settled that a court may not inquire into the legislative motive (Tenney v. Brandhove, 341 U.S. 367, 377, 71 S.Ct. 783, 95 L.Ed. 1019), it is equally well settled that a court may inquire into the legislative purpose. (See Baskin v. Brown, 4 Cir., 174 F.2d 391, 392-393, and Davis v. Schnell, D.C., 81 F.Supp. 872, 878-880, affirmed 336 U.S. 933, 69 S.Ct. 749, 93 L.Ed. 1093, in which state efforts to disenfranchise Negroes were struck down as violative of the Fifteenth Amendment.) Legislative motive-- good or bad-- is irrelevant to the process of judicial review; but legislative purpose is of primary importance in determining the propriety of legislative action, since the purpose itself must be within the legislative competence, and the methods used must be reasonably likely to accomplish that purpose. Because of this necessity, a study of legislative purpose is of the highest relevance when a claim of unconstitutionality is put forward. Usually a court looks into the legislative history to clear up some statutory ambiguity, as in Davis v. Schnell, D.C., 81 F.Supp. at page 878; but such ambiguity is not the sine quo non for a judicial inquiry into legislative history. See the decision in Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281, in which the Supreme Court showed that the state statute before the court was merely an attempt to avoid a previous decision in which the 'grandfather' clause of an earlier statute had been held void.'
 In Bush v. Orleans Parish School Board, D.C., 191 F.Supp. 871, the court declared unconstitutional acts innocent on their face which substituted a legislative committee for an elected school board, asserting that such acts were part of a program of massive resistance to Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. The court said: 'But, even if we were so disposed, we could not ignore the background of the new legislation.'
 
 
 [10]
 See Sweezy v. New Hampshire, 354 U.S. 234, 255, 77 S.Ct. 1203, 1214, 1 L.Ed.2d 1311 (1957): 'Moreover, this Court has held that the concept of separation of powers embodied in the United States Constitution is not mandatory in state governments.' See also Dreyer v. People of the State of Illinois, 187 U.S. 71, 84, 23 S.Ct. 28, 32, 47 L.Ed. 79, where the Court said: 'Whether the legislative, executive or judicial powers of a State shall be kept altogether distinct and separate, or whether persons or collections of persons belonging to one department may, in respect to some matters, exert powers which, strictly speaking pertain to another department of government, is for the determination of the state. And its determination one way or the other cannot be an element in the inquiry whether the due process of law prescribed by the Fourteenth Amendment has been respected by the State or its representatives when dealing with matters involving life or liberty.'